1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                          **DISTRICT OF NEVADA**
6
7   FRAN DONOVAN et al.,                 )
                                          )
8              Plaintiffs,                )
                                          )        2:08-cv-01675-RCJ-RJJ
9        vs.                             )
                                          )
10  FLAMINGO PALMS VILLAS, LLC et al.,    )        **ORDER**
                                          )
11             Defendants.                )
                                          )
    _____)
12
13          The present cause of action arises out of an alleged real estate scheme involving a

14   condominium development in Las Vegas, Nevada, wherein investors purchased interests in a

15   development that ended up being considerably different from, and less profitable than, what was

16   represented to them.  Plaintiffs in this lawsuit are the individuals who invested in the condominium

17   development by purchasing units.  Defendants are those parties who developed, promoted, sold,

18   appraised, and financed the development's units and who allegedly jointly participated in the

19   fraudulent scheme.  Many Defendants have filed separate motions to dismiss under Rules 12(b)(6)

20   and 9(b), and the Court denied these motions on December 15, 2009. (*See* #274).  Now before the

21   Court is Defendant Stump, Storey, Callahan & Dietrich, P.A.'s ("Stump") Motion to Dismiss

22   Plaintiffs' Second Amended Complaint (#192).  After several stipulations extending time to file

23   responses, culminating in a deadline of December 28, 2009, (*see* #268), Plaintiffs have failed to file

24   a timely response in the almost five months this motion has been pending.  This constitutes consent

25

1    to granting the motion. *See* L.R. 7-2(d).[1]  Plaintiffs have filed a Motion for Extension of Time

2    (#295), which the Court grants in part; the motion is untimely, but the Court will consider it in the

3    interest of justice.  However, for the reasons given herein, the Court also grants the Motion to

4    Dismiss (#192), with leave to amend.

5    **I.     FACTS**

6        Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium

7    units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the

8    "Development").  Originally, there were 139 Defendants, of which 121 appear to remain in the

9    Second Amended Complaint ("SAC") (#183).  Defendants are individuals and entities who allegedly

10    defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development.

11    The Development consists of a 12-acre plot of land on which sit sixteen three-story apartment

12    buildings, containing a total of 360 rental units.  The three apartment buildings occupy 2.64 acres.

13    The remaining 9.44 acres consist of several hundred parking spaces, swimming pools, and other

14    open land (the "Common Area").

15        Beginning in 2004, Defendants began promoting and selling the 360 units in the

16    Development to buyers.  Defendants promoted the Development as a "resort community" that would

17    be developed into a hotel.  Initially, and before assuming its current name, the Development was

18

19        [1]In a "Emergency Motion for an Order Finding Plaintiff's Opposition (Docket #290, 291)

20 to Defendants' Motion to Dismiss Timely (Docket #292) Filed," ("Motion for Extension of Time") (#295), one of Plaintiffs' attorneys admits failing to file a timely response by December 28, but claims this was due to the holidays, and that upon returning to his office, he became ill

21 for several weeks.  Plaintiffs' counsel does not offer an adequate explanation for the initial failure to file before December 28, 2009 before he became ill, or, moreover, why neither of

22 Plaintiffs' two other attorneys of record did not file a response.  Mr. Hyman, the California attorney who fell ill after voluntarily missing the deadline due to his own holiday plans, is

23 assisted in the case by his associate, Ms. Coverdale, and by a local attorney, Mr. Carson, neither of whom filed a timely response.  The deadline fell within Mr. Hyman's own holiday vacation

24 period, not the Court's, and in any case Plaintiffs' counsel knew of the deadline for months beforehand.  The response is untimely.  However, in the interest of justice, the Court will

25 consider the untimely response.

called the Las Vegas Cay Club Resort & Marina. Defendants allegedly represented that the Development already boasted numerous valuable amenities, such as large covered patios, weight rooms, and spas, and that Defendants planned to enhance the Development with many other amenities, such as a game room, a water park, a restaurant, and conference facilities. By paying a non-refundable $5,000 payment, Plaintiffs were allowed to enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit reserved for purchase. Plaintiffs were later provided with a price list for the units, ranging from $199,000 to $499,900. After Plaintiffs invested, Defendants circulated various brochures and letters to Plaintiffs, informing Plaintiffs of the status of the Development. These letters and brochures described or displayed images of the various improvements to the Development. Defendants also circulated a map of the Development.

Plaintiffs allege that the deeds they received in the purchase of each unit represented that Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which included parking spaces, swimming pools, and many other valuable amenities that Defendants promised to add to the Development. After the deeds were signed, Plaintiffs allege that Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the Development did not include the Common Area, but were limited to their individually purchased rental units and the area common to their particular building. As a result, Plaintiffs' purchased units did not even include any of the Development's parking spaces. Plaintiffs contend that the representations made in the fifty-seven page declaration conflicted with the advertising and other promotional representations made by Defendants, the deeds, and the appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

Plaintiffs are suing several groups of Defendants. First, Plaintiffs are suing those individuals who were directly behind purchasing the Development and concocting the alleged scheme, as well as the companies they formed to carry out the scheme. These Defendants include David Schwarz, F. Dave Clark, W. Scott Callahan, David Band, Stanley Kane, Craig Holt, Jeffrey Aeder, Kevin

Connor, Harvey Birdman, Herbert Hirsch, Michael Werner, Marc Roberts, Harris Friedman, Donneil Hecer, and Louis Birdman.  Entity Defendants in this group include nineteen entities formed, owned, and operated by Schwarz and Clark; two entities formed, owned, and operated by Schwarz, Callahan, and Clark; one entity formed, owned, and operated by Clark alone; three of Band's companies; one entity formed by Holt and Schwarz; one entity formed by Aeder and Connor; and twelve entities formed, owned, and operated by Harvey Birdman, Hirsch, Werner, Roberts, Friedman, Hecer, and/or Louis Birdman.  Plaintiffs allege that these individuals owned, operated, or managed these entities in an effort to carry out the alleged scheme.  Plaintiffs call these Defendants the LVCC Defendants.

Second, Plaintiffs are suing individuals who formed, owned, and/or operated a company called International Association of Investors, LLC ("IAI").  These individuals include Don Burnham, Justin Burnham, Marc Burnham, George Homick, and Cindy Richichi.  IAI was allegedly significantly involved with getting buyers to invest in the Development.  Plaintiffs are also suing IAI itself and refer to these Defendants as the IAI Defendants.

Third, Plaintiffs are suing two individuals, Dianne Sealey and Faye Rivera, who served as appraisers of the Development's rental units.  Plaintiffs are also suing The Appraisal Team, LLC, the company owned or operated by Sealey and Rivera.  Plaintiffs refer to these Defendants as the Appraiser Defendants.  Plaintiffs allege that the Appraiser Defendants were agents of the LVCC Defendants and worked with them to carry out the scheme by overvaluing the rental units by as much as 80%.

Fourth, Plaintiffs are suing individuals or companies that acted as sales agents for the Development's rental units or who acted as loan brokers in connection with the financing obtained to purchase the rental units:  Barry Graham, Phil Graham, Georgia Ann Johnson, Mortgage Loan Specialists, Inc. (formed by Johnson), Ross Pickard, John Sinclair, Ricky Stokes, Fred Clark, Colin Brechbill, Mike Olivera, Frank Dowd, Allison Tolson, Kelly Schnorenberg, Todd Bradford, Susan

1    Russell, Adiel Gorel, Dan Beit, and Trudy Herrell.  Plaintiffs refer to these Defendants as the

2    Seller/Broker Defendants.

3         Fifth, Plaintiffs are suing thirty-nine companies that provided the lending to Plaintiffs in

4    connection with the purchase of the rental units.  Plaintiffs refer to these Defendants as the Financial

5    Institution Defendants.

6         Sixth, Plaintiffs are suing Commonwealth Land Title Insurance Company ("CLTI"), one of

7    the title companies involved in the transactions.  Plaintiffs refer to this Defendant as the Title

8    Insurance Company Defendant.

9         Plaintiffs allege that the Defendants acted in concert in a "convoluted interrelationship each

10   with the other" to carry out the alleged scheme, which resulted in the sale of 342 of the 360 rental

11   units in the Development, producing approximately $120 million in sales.  Plaintiffs allege that the

12   IAI Defendants, the Seller/Broker Defendants, and the Appraiser Defendants acted, directly or

13   indirectly, with the LVCC Defendants to carry out the scheme.  Plaintiffs allege that the

14   Seller/Broker Defendants acted as agents for the Financial Institution Defendants, and that the

15   Financial Institution Defendants thereby are charged with the fraudulent acts of the Seller/Broker

16   Defendants.

17        According to Plaintiffs, no improvements were ever made to the Development, and Plaintiffs

18   have enjoyed no interest in their purchased units.  Plaintiffs allege that Defendants have managed

19   and controlled the purchased units since their sale, utilizing them for hotel rentals and other means,

20   or alternatively, have stripped the units of all their furniture and fixtures.  The LVCC Defendants

21   will not return possession of the purchased units to Plaintiffs and will not account for the rental

22   income.  In the end, Plaintiffs allege that they are left with "title to a downgraded physical unit only,

23   without parking, have no interest in any of, what was identified in the subdivision map as, the

24   'common element,' owe homeowner association dues and levies for maintenance of 'common

25   areas,' that the PLAINTIFFS investors did not and do not own, and are liable for millions in loans

1    which funds were provided to the LVCC DEFENDANTS which funds were not used to create a

2    resort property as represented." (#126 ¶ 227).  As a result, Plaintiffs have filed the present lawsuit

3    seeking rescission of the sales, a cancellation of the related loans, a return of the monies paid, a

4    clearance of the adverse credit reports that have resulted from defaults on the loans, an appointment

5    of a receiver to take over the Development, and an injunction to prevent any further encumbrances

6    against the Development.

7    **II.    PROCEDURAL HISTORY**

8            Plaintiffs filed the Complaint on November 26, 2008. (#1).  Several Defendants filed motions

9    to dismiss.  On March 16, 2009, Plaintiffs filed their First Amended Complaint ("FAC"). (#126).

10   The FAC differed significantly from the original Complaint in how it classified the various groups

11   of Defendants and in how it directed certain allegations at specific Defendants.  Many Defendants

12   filed motions to dismiss the FAC.  On June 23, 2009, the Court granted these motions (#104, #106,

13   #107, #119, #122, #132) with leave to amend.  In that Order (#177), the Court noted that the FAC

14   failed to present facts demonstrating wrongs by particular defendants, as required under Rule 9(b)

15   for actions sounding in fraud.  Specifically as to Band, the FAC failed to allege what section of the

16   Securities Act of 1933 or the Securities and Exchange Act of 1934 Band allegedly violated, to

17   identify each alleged fraudulent or misleading statement made by Band and why it was fraudulent

18   or misleading, to allege facts giving rise to a strong inference of the scienter required for fraud, or

19   to otherwise comply with Rule 9(b).  Nor did the FAC identify what kind of "security" was allegedly

20   at issue.  The Court dismissed the claims against Band as to the Securities Act of 1933 and the

21   Securities and Exchange Act of 1934, the fraud claims under the Interstate Land Sales Full

22   Disclosure Act, the RICO claims, the common law fraud claims, and the civil conspiracy and

23   constructive trust claims, all because of failure to plead with the requisite particularity under Rule

24   9(b).  The Court also dismissed all claims against the Financial Institution Defendants for failure to

25   plead agency with the requisite particularity under Rule 9(b).  The Court noted that Plaintiffs would

have to allege which Seller/Broker Defendants were agents of which Financial Institution Defendants in order to implicate any of the latter in fraud.  Plaintiffs would also need to identify which specific actions were taken by which Seller/Broker Defendants to constitute fraud, including "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Plaintiffs then filed the SAC (#183).  Many Defendants moved to dismiss the SAC, but the Court denied their motions on December 14, 2009. (*See* #274).  Stump's Motion to Dismiss (#192) was continued by stipulation, however, and is now before the Court.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff

must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.    Rule 9(b)**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). "When an entire complaint, or an entire claim within a complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

"Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring

about the desired result." *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).  Nevertheless, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLO*, 476 F.3d 756, 764-65 (9th Cir. 2007).  "[T]he plaintiffs must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id*. (quoting *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 541 (9th Cir. 1989)). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charge so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

## IV.   ANALYSIS

In the 114-page SAC, Plaintiffs have pled eleven causes of action: (1) Securities Act of 1933, 15 U.S.C. § 77(b)(1) and the Securities Exchange Act of 1934, 15 U.S.C. § 78(c)(a)(10) against the LVCC, Seller/Broker, and IAI Defendants; (2) the Interstate Land Sale Act ("ILSA"), 15 U.S.C. § 1701 against the LVCC, Seller/Broker, and IAI Defendants; (3) Racketeer Influenced and Corrupt Organizations Act ("RICO"), [no identified sections of the statute] against the LVCC and Seller/Broker Defendants; (4) Fraud (Intentional Misrepresentation) against the LVCC Defendants; (5) Fraud (Concealment) against the LVCC Defendants; (6) Conspiracy to Commit Fraud against the LVCC Defendants; (7) Professional Negligence against the Appraiser, Seller/Broker, and IAI Defendants; (8) Constructive Trust against the LVCC Defendants; and the following new causes of action: (9) Breach of Contract and Good Faith and Fair Dealing against Defendant CLTI; (10) Declaratory Relief and Negligent Misrepresentation against the Financial Institution Defendants; and (11) Negligent Misrepresentation against the Seller/Broker, Appraiser, and IAI Defendants.

The SAC is almost entirely grounded in fraud.  Consequently, it must comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  The SAC revolves around the alleged fraudulent scheme, and each pleaded cause of action is inextricably tied to the alleged fraud.  The fraudulent scheme involved a group of individuals and their alleged shell companies that they used to conceal their scheme, who allegedly acquired the Development and then persuaded Plaintiffs to invest in the Development by purchasing one or more condominium units within the Development.  In getting Plaintiffs to purchase the units, Defendants allegedly misrepresented the nature of the deal.  Defendants represented that they would pour significant resources and money into improving the rental units and the entire Development, and that Plaintiffs would be purchasing an interest in the entire Development, rather than a mere rental unit.  Once Plaintiffs signed on, Defendants continued to perpetuate the scheme by lying to Plaintiffs about improvements in the Development, which were in fact not occurring.  The scheme involved an array of players, from the ones who acquired the Development and concocted the scheme, to the parties who promoted and appraised the value of the Development, to the parties who sold the rental units, to the parties who helped Plaintiffs procure financing for their investments.  All of the claims in the SAC are tied to this alleged fraud.

The problem with the SAC with respect to allegations against Stump is that each of the causes of action in the SAC are pled exclusively against particular groupings of Defendants, as defined in paragraphs 92–162 of the SAC, and Defendant Stump is not included in any of these groupings.  Defendant W. Scott Callahan is listed as an LVCC Defendant, and he is alleged to be a current or past employee of Stump. (#183 ¶ 94).  But Stump as an entity is nowhere implicated in any of the individual causes of action pled.  There are a few allegations concerning Stump sparsely scattered throughout the SAC, but nothing plausibly implicating Stump in any wrongdoing.  As Stump points out, only 6 of 458 paragraphs in the SAC mention Stump at all, one of which does not directly mention Stump but only one of its alleged employees:

94. W. Scott Callahan ("CALLAHAN"), is a resident of the State of Florida, and is and/or was employed as an attorney with the law firm formed and organized in Florida, defendant Stump, Storey, Callahan, and Dietrich, P.A. ("STUMP STOREY").

. . . .

98. Defendants SCHWARZ, CALLAHAN, and F. DAVE CLARK jointly formed, operated, directed and/or owned the following corporate entities for the purpose of carrying out the fraudulent scheme:

(a) Defendant Cristal Clear Commerce, LLC, ("CRISTAL CLEAR"), a Florida limited liability company;

(b) Defendant DC7, LLC, ("DC7"), a Florida limited liability company.

. . . .

206. . . . Ex. No. 28, is a letter from Stump, Callahan, Dietrich & Spears P.A. by Kathy J. Cody Real Estate Closing Manager thereby identifying defendant Stump, Callahan Dietrich & Spears. Exhibit No. 29 is a closing letter which identifies Escrow Fee, $5,693.06 to Defendant Stump Storey and Callahan ("30-STUMP-STORYCALL"). . . .

. . . .

269. Attached as Exhibit No. 55, is a typical "U.S. Department of Housing and Urban Development Settlement Statement," for the sale of a PLAINTIFF's FPV-LLC-NV condominium unit. Exhibit No. 50 identifies:

. . . .

(i) HUD's "1307 Detailed Breakdown of Additional Settlement Charges," indicates (among other charges):

. . . .

(3) "Document Fee to" defendant "Stump, Callahan," $400.00 (a law firm located in Florida that has no involvement in the transaction).

270. Attached as Exhibit No. 56, is the Kimball Pugmire Settlement Statement, for a contract sales price of $378,422.00 and includes:

. . . .

(c) Under the "1307 Detailed Breakdown of Additional Settlement" charges includes:

. . . .

(2) An "Escrow Fee to (the Florida law firm) Stump, Callahan $400.00."

. . . .

273.  On information and belief, PLAINTIFFS allege that each of the 330, HUD settlement statements, (Examples, Exs. Nos. 55 and 56), each indicated payments to the defendant Florida law firm of defendant Stump, Storey & Callahan of $400.00 for escrow fees and/or documentation, which service was not provided, that each of the 330, HUD settlement statements, indicated additional development payments to DC704, LLC of $3,000.00 to $4,000.00, that were not authorized.

. . . .

411.  PLAINTIFFS also assert that certain specific payments, to Stump, Callahan, et al., developers' fees, capital contribution fees, were without basis.

(#183 ¶¶ 94–411).  The allegations in these paragraphs indicate that Stump may have received fees for services not rendered, but there is no allegation of conspiracy or fraud.  One could perhaps infer a conspiracy based on these facts (or conversion or embezzlement), but Plaintiffs have not identified Stump as a Defendant under any of the causes of action pled, and they have not pled conversion or embezzlement.  Perhaps Plaintiffs also attempt to hold Stump liable for the personal acts of Callahan, one of the LVCC Defendants, but that is not clear.  Even if such an allegation were made, members of a professional association can only be held liable for acts in which they personally participate. *Fierle v. Perez*, 219 P.3d 906, 910 (Nev. 2009) (citing Nev. Rev. Stat. § 89.220(1)).  In any case, any causes of action sounding in fraud are not sufficiently pled against Stump under Rule 9(b) or Rule 12(b)(6).  There are no allegations of fraudulent statements by Stump or any of its members.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Extension of Time (#295) is granted in part.

IT IS FURTHER ORDERED that the Motion to Dismiss (#192) is GRANTED with leave to amend as against Defendant Stump only.  Plaintiffs should specify conspicuously in a

1   Third Amended Complaint which causes of action are pled against Stump and whether Stump is

2   alleged to be directly liable or vicariously liable for the acts of Mr. Callahan or others.

3          DATED:        March 15, 2010

4

5          _____

6          Robert C. Jones
           United States District Judge

7