FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 1 4 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| FRAN DONOVAN et al., | ) | |
| Plaintiffs, | ) ) | 2:08-cv-01675-RCJ-RJJ |
| vs. | ) ) | |
| FLAMINGO PALMS VILLAS, LLC et al., | ) ) | **ORDER** |
| Defendants. | ) ) | |

The present case arises out of an alleged conspiracy to defraud investors in a condominium development in Las Vegas. Plaintiffs are those who purchased units in the Development. Defendants are those who developed, promoted, sold, appraised, and financed the Development. Various Defendants have so far filed twenty-three motions to dismiss, five of which are currently before the Court, as is a motion by nine Plaintiffs to voluntarily dismiss as against Defendant Allied Home Mortgage Capital Corp. ("Allied") and with respect to seven units at the Development. The pending motions are summarized in the following chart:

| Movant(s) | ECF No. and Basis | Related Pleadings |
|---|---|---|
| Citimortgage, Inc. | 341 - Rules 12(b)(6) and 9(b) | Supplement (351); Joiner of Allied Home Mortgage Capital Corp. ("AHMC") (350); Joiner of GMAC Mortgage, LLC, Homecomings Financial, LLC, and Impact Funding Corp. ("IFC") (356); Joiner of JPMorgan Chase Bank, N.A. ("Chase") and EMC Mortgage Corp. ("EMC") (371); Response (402); Reply (413) |

| Flagstar Bancorp, Inc. ("Flagstar") | 345 - Rules 12(b)(6) and 9(b) | Response (403) |
|---|---|---|
| Jeffrey Aeder, Kevin Connor, JDI Craps, LLC, JDI Loans, LLC, and JDI Realty, LLC (collectively, "JDI") | 352 - Rule 15(a) | Notice of Non-opposition (391); Response (404); Reply (409) |
| Stump, Storey, Callahan & Dietrich, P.A. ("Stump") | 358 - Rules 12(b)(6), 9(b), and 41(b) | Notice of Non-opposition (390); Response (405); Reply (410) |
| Stanley Kane | 359 - Rule 4(m) | [None] |
| Nine Plaintiffs | 416 - Rule 41(a)(2) | [None] |

For the reasons given herein, the Court grants the Motion to Dismiss (ECF No. 416), grants in part and denies in part the Motions to Dismiss (ECF Nos. 341, 345), and denies the Motions to Dismiss (ECF Nos. 352, 358). The Motion to Dismiss (ECF No. 359) has been terminated by the Clerk because Plaintiffs have voluntarily dismissed the movant. Although Plaintiffs' counsel far exceeded the scope of his leave to amend, the Court will not penalize his clients at this stage and will therefore not strike the Third Amended Complaint (TAC").

## I.    FACTS

Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the "Development"). Originally, there were 139 Defendants, 121 of whom remained in the Second Amended Complaint ("SAC") (ECF No. 183). Defendants are individuals and entities who allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development. The Development consists of an approximately 12-acre plot of land on which sit sixteen three-story apartment buildings, containing a total of 360 rental units. The three apartment buildings occupy 2.64 acres. The remaining 9.44 acres consist of several hundred parking spaces, swimming pools, and other open land (the "Common Area").

1    Beginning in 2004, Defendants began promoting and selling the 360 units in the
2  Development to buyers.  Defendants promoted the Development as a "resort community" that
3  would be developed into a hotel.  Initially, and before assuming its current name, the
4  Development was called the Las Vegas Cay Club Resort & Marina.  Defendants allegedly
5  represented that the Development already boasted numerous valuable amenities, such as large
6  covered patios, weight rooms, and spas, and that Defendants planned to enhance the
7  Development with many other amenities, such as a game room, a water park, a restaurant, and
8  conference facilities.  By paying a non-refundable $5,000 payment, Plaintiffs were allowed to
9  enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit
10  reserved for purchase.  Plaintiffs were later provided with a price list for the units, ranging from
11  $199,000 to $499,900.  After Plaintiffs invested, Defendants circulated various brochures and
12  letters to Plaintiffs, informing Plaintiffs of the status of the Development.  These letters and
13  brochures described or displayed images of the various improvements that were being done to
14  the Development.  Defendants also circulated a map of the Development.

15    Plaintiffs allege that the deeds they received in the purchase of each unit represented that
16  Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which
17  included parking spaces, swimming pools, and many other valuable amenities that Defendants
18  promised to add to the Development.  After the deeds were signed, Plaintiffs allege that
19  Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the
20  Development did not in fact include the Common Area, but were limited to their individually
21  purchased rental units and the area common to their particular buildings.  As a result, Plaintiffs'
22  purchased units did not even include any of the Development's parking spaces.  Plaintiffs
23  contend that the representations made in the fifty-seven page declaration conflicted with the
24  advertising and other promotional representations made by Defendants, the deeds, and the
25  appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

1    Plaintiffs are suing several groups of Defendants.  First, Plaintiffs are suing those

2   individuals who were directly behind purchasing the Development and concocting the alleged

3   scheme, as well as the companies they formed to carry out the scheme.  These Defendants

4   include David Schwarz, F. Dave Clark, W. Scott Callahan, David Band, Stanley Kane, Craig

5   Holt, Jeffrey Aeder, Kevin Connor, Harvey Birdman, Herbert Hirsch, Michael Werner, Marc

6   Roberts, Harris Friedman, Donneil Hecer, and Louis Birdman.  Entity Defendants in this group

7   include nineteen entities formed, owned, and operated by Schwarz and Clark; two entities

8   formed, owned, and operated by Schwarz, Callahan, and Clark; one entity formed, owned, and

9   operated by Clark alone; three of Band's companies; one entity formed by Holt and Schwarz;

10   one entity formed by Aeder and Connor; and twelve entities formed, owned, and operated by

11   Harvey Birdman, Hirsch, Werner, Roberts, Friedman, Hecer, and/or Louis Birdman.  Plaintiffs

12   allege that these individuals owned, operated, or managed many entities in an effort to carry out

13   the alleged scheme, which entities are also named as Defendants.  Collectively, Plaintiffs call

14   these Defendants the "LVCC Defendants."

15    Second, Plaintiffs are suing individuals who formed, owned, and/or operated a company

16   called International Association of Investors, LLC ("IAI").  These individuals include Don

17   Burnham, Justin Burnham, Marc Burnham, George Homick, and Cindy Richichi.  IAI was

18   allegedly significantly involved with getting buyers to invest in the Development.  Plaintiffs are

19   also suing IAI itself, and they refer to these Defendants collectively as the "IAI Defendants."

20    Third, Plaintiffs are suing two individuals, Dianne Sealey and Faye Rivera, who served

21   as appraisers of the Development's rental units.  Plaintiffs are also suing The Appraisal Team,

22   LLC, the company owned or operated by Sealey and Rivera.  Plaintiffs refer to these Defendants

23   collectively as the "Appraiser Defendants."  Plaintiffs allege that the Appraiser Defendants were

24   agents of the LVCC Defendants and worked with them to carry out the scheme by overvaluing

25   the rental units by as much as 80%.

1    Fourth, Plaintiffs are suing individuals or companies that acted as sales agents for the

2  Development's rental units or who acted as loan brokers in connection with the financing

3  obtained to purchase the rental units:  Barry Graham, Phil Graham, Georgia Ann Johnson,

4  Mortgage Loan Specialists, Inc. (formed by Johnson), Ross Pickard, John Sinclair, Ricky Stokes,

5  Fred Clark, Colin Brechbill, Mike Olivera, Frank Dowd, Allison Tolson, Kelly Schnorenberg,

6  Todd Bradford, Susan Russell, Adiel Gorel, Dan Beit, and Trudy Herrell.  Plaintiffs refer to

7  these Defendants collectively as the "Seller/Broker Defendants."

8    Fifth, Plaintiffs are suing thirty-nine companies that provided the lending to Plaintiffs in

9  connection with the purchase of the rental units.  Plaintiffs refer to these Defendants as the

10  "Financial Institution Defendants."

11    Sixth, Plaintiffs are suing Commonwealth Land Title Insurance Company ("CLTI"), one

12  of the title companies involved in the transactions.  Plaintiffs refer to this Defendant as the "Title

13  Insurance Company Defendant."

14    Plaintiffs allege that the Defendants acted in concert in a "convoluted interrelationship

15  each with the other" to carry out the alleged scheme, which resulted in the sale of 342 of the 360

16  rental units in the Development, producing approximately $120 million in sales.  Plaintiffs allege

17  that the IAI Defendants, the Seller/Broker Defendants, and the Appraiser Defendants acted,

18  directly or indirectly, with the LVCC Defendants to carry out the scheme.  Plaintiffs allege that

19  the Seller/Broker Defendants acted as agents for the Financial Institution Defendants, and that

20  the Financial Institution Defendants thereby are charged with the fraudulent acts of the

21  Seller/Broker Defendants.

22    According to Plaintiffs, no improvements were ever made to the Development as was

23  represented, and Plaintiffs have enjoyed no interest in their purchased units.  Plaintiffs allege that

24  Defendants have managed and controlled the purchased units since their sale, utilizing them for

25  hotel rentals and other means, or alternatively, have stripped the units of all their furniture and

1    fixtures.  The LVCC Defendants will not return possession of the purchased units to Plaintiffs

2    and will not account for the rental income.  In the end, Plaintiffs allege that they are left with

3    "title to a downgraded physical unit only, without parking, have no interest in any of, what was

4    identified in the subdivision map as, the 'common element,' owe homeowner association dues

5    and levies for maintenance of 'common areas,' that the PLAINTIFFS investors did not and do

6    not own, and are liable for millions in loans which funds were provided to the LVCC

7    DEFENDANTS which funds were not used to create a resort property as represented."  As a

8    result, Plaintiffs have filed the present lawsuit seeking rescission of the sales, a cancellation of

9    the related loans, a return of the monies paid, a clearance of the adverse credit reports that have

10   resulted from defaults on the loans, an appointment of a receiver to take over the Development,

11   and an injunction to prevent any further encumbrances against the Development.

12   **II.      PROCEDURAL HISTORY**

13           Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1).  Several

14   Defendants filed motions to dismiss.  On March 16, 2009, Plaintiffs filed their First Amended

15   Complaint ("FAC") (ECF No. 126).  The FAC differed significantly from the original Complaint

16   in how it classified the various groups of Defendants and in how it directed certain allegations at

17   specific Defendants.  The FAC sought to remedy some of the arguments brought out by the

18   various motions to dismiss.

19           In response to the FAC, Defendant David Band filed a renewed Motion to Dismiss.  On

20   June 23, 2009, the Court granted six motions to dismiss, with leave to amend.  In that Order

21   (ECF No. 177), the Court noted that the FAC failed to present facts demonstrating wrongs by

22   particular defendants, as required under Rule 9(b) for actions sounding in fraud.  Specifically as

23   to Band, the FAC failed to allege what section of the Securities Act of 1933 or the Securities and

24   Exchange Act of 1934 Band allegedly violated, to identify each alleged fraudulent or misleading

25   statement made by Band and why it was fraudulent or misleading, to allege facts giving rise to a

1  strong inference of the scienter required for fraud, or to otherwise comply with Rule 9(b). Nor

2  did the FAC identify what kind of "security" was allegedly at issue. The Court dismissed the

3  claims against Band as to the Securities Act of 1933 and the Securities and Exchange Act of

4  1934, the fraud claims under the Interstate Land Sales Full Disclosure Act, the RICO claims, the

5  common law fraud claims, and the civil conspiracy and constructive trust claims, all because of

6  failure to plead with the requisite particularity under Rule 9(b). The Court also dismissed all

7  claims against the Financial Institution Defendants for failure to plead agency with the requisite

8  particularity under Rule 9(b). The Court noted that Plaintiffs would have to allege which

9  Seller/Broker Defendants were agents of which Financial Institution Defendants in order to

10 implicate any of the latter in fraud. Plaintiffs would also need to identify which specific actions

11 were taken by which Seller/Broker Defendants to constitute fraud, including "time, place, and

12 specific content of the false representations as well as the identities of the parties to the

13 misrepresentations." Plaintiff then filed the SAC (ECF No. 183).

14        The Court later granted Defendant Stump's motion to dismiss the SAC, but granted

15 Plaintiffs leave to amend "with respect to [Stump] only." (Order 12:24–25, Mar. 15, 2010, ECF

16 No. 326). Plaintiffs then filed the Third Amended Complaint ("TAC") (ECF No. 335), which

17 made more than the permitted amendments, adding a total of ten pages and changing the

18 structure of the complaint in ways not permitted by the order. First, Plaintiffs have re-

19 categorized Defendants into new groups: (1) the Fraudulent Enterprise Defendants ("FEPD");

20 (2) the Promoter/Broker Defendants; (3) the Appraiser Defendants; (4) the Financial Institution

21 Defendants; and (5) the Title Company Defendants. The FEPD consist of seventeen Individual

22 FEPD and 38 Corporate FEPD, and appear to be the same, or roughly the same, as the previous

23 LVCC Defendants. The 25 Promoter/Broker Defendants appear to be the same, or roughly the

24 same, as the previous Seller/Broker Defendants plus the previous IAI Defendants. The Title

25 Company Defendant is now sued in "two capacities." Second, the facts section is almost

1   completely rewritten.  It is so different from the facts section of the SAC that a line-by-line

2   comparison to identify particular differences between the SAC and the TAC is impracticable.

3          As the Court noted in the order dismissing the SAC, apart from naming it as a Defendant

4   the SAC only made six allegations against Stump: (1) to identify Defendant W. Scott Callahan as

5   a present and/or former employee of Stump; (2) to allege the existence of a letter from Stump

6   identifying an escrow fee owed to it; (3) to identify a HUD settlement statement containing a

7   document fee to Stump; (4) to identify a settlement statement containing an escrow fee to Stump;

8   (5) to allege the existence of more such escrow fees; and (6) to allege that "certain specific

9   payments" were made to Stump "without basis." (*See* Order 10–12, Mar. 15, 2010, ECF No. 326

10  (citing SAC ¶¶ 94, 206, 269, 270, 273, 411)).  The TAC now contains eight allegations against

11  Stump in addition to naming Stump as a Defendant: (1) that Stump is liable because of its agent,

12  Callahan; (2) that Stump is liable for Callahan's participation in creating and filing the CC&Rs

13  that fraudulently excluded the Common Area; (3) that Stump is liable as Callahan's partner for

14  his management and operation of "the enterprise"; (4) that Stump formed Crystal Clear

15  Commerce, LLC, which was one of the entities that marketed the Development; (5) that Stump

16  formed DC7, LLC; (6) that Stump formed DC711, LLC, which was used "in furtherance of the

17  fraudulent enterprise"; (7) that a letter exists from Stump by "Kathy J. Cody Real Estate Closing

18  Manager"; and (8) that Stump received certain escrow fees. (*See* TAC ¶¶ 109, 216, 217, 279–82,

19  293, 338).

20         Plaintiffs did not have leave to make such broad amendments, but only to amend with

21  respect to Stump.  In extending time to amend as against Stump, the Court gave Plaintiffs until

22  March 31, 2010 to amend against Stump and to "*seek leave* to file a Third Amended Complaint

23  as to the remaining defendants." (Order 2:2–5, Mar. 17, 2010, ECF No. 330-2 (emphasis

24  added)).  Plaintiffs never sought leave to amend as broadly as they have.  Still, the Court will not

25  at this stage punish Plaintiffs for their attorney's actions where the allegations may have merit.

1  III.    **LEGAL STANDARDS**

2        A.    **Rule 12(b)(6)**

3        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

4  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

5  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

6  (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

7  that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule

8  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,

9  581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to

10  state a claim, dismissal is appropriate only when the complaint does not give the defendant fair

11  notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v.*

12  *Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a

13  claim, the court will take all material allegations as true and construe them in the light most

14  favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The

15  court, however, is not required to accept as true allegations that are merely conclusory,

16  unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State*

17  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with

18  conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is

19  plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

20        "Generally, a district court may not consider any material beyond the pleadings in ruling

21  on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the

22  complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

23  1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged

24  in a complaint and whose authenticity no party questions, but which are not physically attached

25  to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

1  converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14

2  F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial

3  notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282

4  (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the

5  motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara*

6  *Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

7      **B.    Rule 9(b)**

8          "In alleging fraud or mistake, a party must state with particularity the circumstances

9  constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has "interpreted Rule 9(b)

10  to mean that the pleader must state the time, place, and specific content of the false

11  representations as well as the identities of the parties to the misrepresentation." *Alan Neuman*

12  *Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). "When an entire complaint, or an

13  entire claim within a complaint is grounded in fraud and its allegations fail to satisfy the

14  heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or

15  claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

16          "Participation by each conspirator in every detail in the execution of the conspiracy is

17  unnecessary to establish liability, for each conspirator may be performing different tasks to bring

18  about the desired result." *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367

19  (9th Cir. 1980). Nevertheless, Rule 9(b) does not allow a complaint to merely lump multiple

20  defendants together but "require[s] plaintiffs to differentiate their allegations when suing more

21  than one defendant . . . and inform each defendant separately of the allegations surrounding his

22  alleged participation in the fraud." *Swartz v. KPMG LLO*, 476 F.3d 756, 764-65 (9th Cir. 2007).

23  "[T]he plaintiffs must, at a minimum, 'identify the role of each defendant in the alleged

24  fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package Express. Inc.*, 885 F.2d 531, 541

25  (9th Cir. 1989)). "To comply with Rule 9(b), allegations of fraud must be specific enough to

1   give defendants notice of the particular misconduct which is alleged to constitute the fraud

2   charge so that they can defend against the charge and not just deny that they have done anything

3   wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

4         **C.**    **Rule 15(a)**

5         "In all other cases, a party may amend its pleading only with the opposing party's written

6   consent or the court's leave.  The court should freely give leave when justice so requires." Fed.

7   R. Civ. P. 15(a)(2).

8         **D.**    **Rule 41(b)**

9         "If the plaintiff fails to prosecute or to comply with these rules or a court order, a

10  defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

11        **E.**    **Rule 4(m)**

12        If a defendant is not served within 120 days after the complaint is filed, the
court—on motion or on its own after notice to the plaintiff—must dismiss the action

13  without prejudice against that defendant or order that service be made within a
specified time.  But if the plaintiff shows good cause for the failure, the court must

14  extend the time for service for an appropriate period.  This subdivision (m) does not
apply to service in a foreign country under Rule 4(f) or 4(j)(1).

15  Fed. R. Civ. P. 4(m).

16        **F.**    **Rule 41(a)(2)**

17        "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request

18  only by court order, on terms that the court considers proper. . . . Unless the order states

19  otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. p. 41(a)(2)

20  **IV.**    **ANALYSIS**

21        Various Financial Institution Defendants ("FID") move against the TAC under Rules

22  12(b)(6) and 9(b).  Only the tenth cause of action for declaratory relief and negligent

23  misrepresentation is pled against the FID.  Plaintiffs accuse the FID of breaching federal

24  regulations governing appraisals.  Plaintiffs allege that two persons, Diane Sealey and Faye

25

1   Rivera, did all 360 appraisals in the Development, and that these appraisals were misleading

2   because: (1) the appraisals included as comparable sales neighboring units that had not in fact

3   sold; (2) the appraisals included the Common Areas in the valuation, but ownership of the

4   Common Areas was eventually excluded from the deeds; and (3) Sealey and Rivera did not

5   separately appraise each unit, but rather did a single appraisal for each *class* of unit and then

6   used those appraisals for every unit within each respective class. (*See* TAC ¶ 477). Plaintiffs

7   also allege that the appraisals were done before the sales and shown to buyers to induce them to

8   purchase the units, an illegal practice called "readdress appraisals." (*Id.* ¶ 478). Plaintiffs then

9   conclude that the FID breached their duty of care in the appraisal process and negligently

10  misrepresented the value of the units because the appraisals departed from the Code of Federal

11  Regulations. (*Id.* ¶¶ 479–89). Plaintiffs also allege that the seller illegally chose the appraisers.

12          At oral argument, the Court noted that it intended to deny the pending motions to dismiss

13  generally, except that it would grant the motions with respect to those FID who were not

14  preferred lenders and did not have any connection to the FEPD or Appraiser Defendants, as such

15  Defendants were innocent third parties contacted by Plaintiffs for loans. The FID movants are

16  Citimortgage (ECF No. 341) and Flagstar (ECF No. 345).

17          At the hearing, it became apparent that Flagstar held only two relevant mortgages, that it

18  was not a preferred lender, that it had no prior arrangement with the developers or appraisers,

19  and that it in fact purchased the mortgages on the secondary market. Plaintiffs' counsel admitted

20  having no indication that Flagstar, Citimortgage, or GMAC were preferred lenders or otherwise

21  associated with the developers or appraisers in such a way that would support a duty of due

22  diligence, and hence a negligent misrepresentation claim. The Motions to Dismiss (ECF Nos.

23  341, 345) are therefore granted as to Flagstar, Citimortgage, and GMAC. The motion is denied

24  as to the other parties who joined it (Bank of America, Countrywide, Allied Home Mortgage

25  Capital, Homecomings, Impac Funding, EMC, and JP Morgan Chase), because those entities did

1   not at the hearing indicate that they are similarly situated to Flagstar. As to JP Morgan Chase,

2   Plaintiff's counsel has in fact introduced evidence into the record that it was a preferred lender,

3   (*see* TAC Ex. 71, Mar. 31, 2010, ECF No. 336-9, at 40), and this was discussed at the hearing.

4   The remaining FID are invited to file their own motions for summary judgment with affidavits

5   indicating that they are similarly situated to Flagstar, Citimortgage, and GMAC. The motions to

6   dismiss are also granted insofar as Plaintiffs allege the FID had a duty to ensure the appraisers

7   they engaged complied with the CFR or other regulations.

8           Next, Plaintiff Stanley Kane argues that he was never timely served with the original

9   Summons and Complaint. He asks the Court to dismiss as against him under Rule 4(m). This

10  motion has been terminated by the Clerk because Plaintiffs have voluntarily dismissed Mr. Kane

11  as a Defendant, without prejudice. (*See* Notice, July 20, 2010, ECF No. 408).

12          Next, nine Plaintiffs have moved to voluntarily dismiss their claims against Allied and

13  against any Defendant with respect to seven units in the Development, without prejudice. The

14  Court grants the motion.

15          Finally, the Court will dispose of several other pending motions without oral argument.

16  First, the Motion to Continue Hearing (ECF No. 387) is denied as moot. Second, the Motion to

17  Substitute Party (ECF No. 392) is granted, based on the movant/new Defendant's representation

18  that the relevant servicing rights have been transferred to it. The motion is unopposed. Third,

19  the Motion for an Order Continuing the Briefing Deadlines (ECF No. 393) is denied as moot.

20  Fourth, the Motion for Leave to File Third Amended Complaint (ECF No. 455) is granted, as

21  indicated at the hearing. The TAC is ECF No. 335. Plaintiffs will not file another version of it.

22  Six motions to dismiss (ECF Nos. 426–429, 432, 483), three motions to extend time regarding

23  those motions (ECF Nos. 434, 442, 454), and a motion to quash (ECF No. 481) remain pending

24  in the case. The motions to extend time are granted, and the remaining motions will not be

25  addressed in this order.

1              **CONCLUSION**

2         IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 341, 345) are

3    GRANTED in part and DENIED in part.  The motions are granted as to Defendants Flagstar,

4    Citimortgage, and GMAC and denied as to Defendants Bank of America, Countrywide,

5    Homecomings, Impac Funding, EMC, and JP Morgan Chase.  The motions are moot as to

6    Defendant Allied, because that Defendant is voluntarily dismissed.  The remaining FID are

7    invited to file motions for summary judgment if they can prove that they are similarly situated to

8    Flagstar, Citimortgage, and GMAC.  Defendants are encouraged to file joint motions where

9    practicable.

10        IT IS FURTHER ORDERED that the Motions to Dismiss (ECF Nos. 352, 358) are

11   DENIED.

12        IT IS FURTHER ORDERED that the Motion to Voluntarily Dismiss (ECF No. 416) is

13   GRANTED.

14        IT IS FURTHER ORDERED that the Motion to Continue Hearing (ECF No. 387) is

15   DENIED as moot.

16        IT IS FURTHER ORDERED that the Motion to Substitute Party (ECF No. 392) is

17   GRANTED.

18        IT IS FURTHER ORDERED that the Motion for an Order Continuing the Briefing

19   Deadlines (ECF No. 393) is DENIED as moot.

20        IT IS FURTHER ORDERED that the Motion for Leave to File Third Amended

21   Complaint (ECF No. 455) is GRANTED.  The TAC is ECF No. 335.  Plaintiffs will not file

22   another version of it.

23        IT IS FURTHER ORDERED that the Motions to Extend Time (ECF Nos. 434, 442, 454)

24   are GRANTED.

25        IT IS SO ORDERED.

1

2    Dated this 13th day of January, 2011.

3

4                                    _____
                                     ROBERT C. JONES
5                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25