UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FRAN DONOVAN, | ) | |
| Plaintiff, | ) | |
| | ) | 2:08-cv-01675-RCJ-RJJ |
| vs. | ) | |
| | ) | |
| FLAMINGO PALMS VILLAS, LLC et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

The present case arises out of an alleged conspiracy to defraud investors in a condominium development in Las Vegas. Plaintiffs are those who purchased units in the Development. Defendants are those who developed, promoted, sold, appraised, and financed the Development. Defendants Michael Werner, Harris Friedman, Harvey Birdman, Herbert Hirsch, Louis Birdman, and Donneil Hecker[1] (the "Werner Defendants") have moved to quash service and to dismiss for insufficient service of process and for lack of personal jurisdiction. Defendant OneWest Bank, FSB ("OneWest") has moved to dismiss for failure to state a claim. Defendant Citimortgage, Inc. has moved for Rule 54(b) certification and has attached a proposed order. (*See* ECF No. 543-1). Defendant Ocwen Loan Servicing, LLC ("Ocwen") has moved to dismiss for failure to state a claim and to expunge the lis pendens. Plaintiffs have filed a notice of

---

[1] Sometimes spelled "Hecer" in the Third Amended Complaint.

voluntarily dismissal of Ocwen.

## I.     FACTS

Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the "Development"). Originally, there were 139 Defendants, 121 of whom remained in the Second Amended Complaint ("SAC") (ECF No. 183). Defendants are individuals and entities who allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development. The Development consists of an approximately 12-acre plot of land on which sit sixteen three-story apartment buildings, containing a total of 360 rental units. The three apartment buildings occupy 2.64 acres. The remaining 9.44 acres consist of several hundred parking spaces, swimming pools, and other open land (the "Common Area").

Beginning in 2004, Defendants began promoting and selling the 360 units in the Development to buyers. Defendants promoted the Development as a "resort community" that would be developed into a hotel. Initially, and before assuming its current name, the Development was called the Las Vegas Cay Club Resort & Marina. Defendants allegedly represented that the Development already boasted numerous valuable amenities, such as large covered patios, weight rooms, and spas, and that Defendants planned to enhance the Development with many other amenities, such as a game room, a water park, a restaurant, and conference facilities. By paying a non-refundable $5,000 payment, Plaintiffs were allowed to enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit reserved for purchase. Plaintiffs were later provided with a price list for the units, ranging from $199,000 to $499,900. After Plaintiffs invested, Defendants circulated various brochures and letters to Plaintiffs, informing Plaintiffs of the status of the Development. These letters and brochures described or displayed images of the various improvements that were being done to the Development. Defendants also circulated a map of the Development.

1    Plaintiffs allege that the deeds they received in the purchase of each unit represented that
2 Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which
3 included parking spaces, swimming pools, and many other valuable amenities that Defendants
4 promised to add to the Development.  After the deeds were signed, Plaintiffs allege that
5 Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the
6 Development did not in fact include the Common Area, but were limited to their individually
7 purchased rental units and the area common to their particular buildings.  As a result, Plaintiffs'
8 purchased units did not even include any of the Development's parking spaces.  Plaintiffs
9 contend that the representations made in the fifty-seven page declaration conflicted with the
10 advertising and other promotional representations made by Defendants, the deeds, and the
11 appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.
12    Plaintiffs are suing several groups of Defendants.  First, Plaintiffs are suing those
13 individuals who were directly behind purchasing the Development and concocting the alleged
14 scheme, as well as the companies they formed to carry out the scheme.  These Defendants
15 include David Schwarz, F. Dave Clark, W. Scott Callahan, David Band, Stanley Kane, Craig
16 Holt, Jeffrey Aeder, Kevin Connor, Harvey Birdman, Herbert Hirsch, Michael Werner, Marc
17 Roberts, Harris Friedman, Donneil Hecer, and Louis Birdman.  Entity Defendants in this group
18 include nineteen entities formed, owned, and operated by Schwarz and Clark; two entities
19 formed, owned, and operated by Schwarz, Callahan, and Clark; one entity formed, owned, and
20 operated by Clark alone; three of Band's companies; one entity formed by Holt and Schwarz;
21 one entity formed by Aeder and Connor; and twelve entities formed, owned, and operated by
22 Harvey Birdman, Hirsch, Werner, Roberts, Friedman, Hecer, and/or Louis Birdman.  Plaintiffs
23 allege that these individuals owned, operated, or managed many entities in an effort to carry out
24 the alleged scheme, which entities are also named as Defendants.  Collectively, Plaintiffs call
25 these Defendants the "LVCC Defendants."

Second, Plaintiffs are suing individuals who formed, owned, and/or operated a company called International Association of Investors, LLC ("IAI"). These individuals include Don Burnham, Justin Burnham, Marc Burnham, George Homick, and Cindy Richichi. IAI was allegedly significantly involved with getting buyers to invest in the Development. Plaintiffs are also suing IAI itself, and they refer to these Defendants collectively as the "IAI Defendants."

Third, Plaintiffs are suing two individuals, Dianne Sealey and Faye Rivera, who served as appraisers of the Development's rental units. Plaintiffs are also suing The Appraisal Team, LLC, the company owned or operated by Sealey and Rivera. Plaintiffs refer to these Defendants collectively as the "Appraiser Defendants." Plaintiffs allege that the Appraiser Defendants were agents of the LVCC Defendants and worked with them to carry out the scheme by overvaluing the rental units by as much as 80%.

Fourth, Plaintiffs are suing individuals or companies that acted as sales agents for the Development's rental units or who acted as loan brokers in connection with the financing obtained to purchase the rental units: Barry Graham, Phil Graham, Georgia Ann Johnson, Mortgage Loan Specialists, Inc. (formed by Johnson), Ross Pickard, John Sinclair, Ricky Stokes, Fred Clark, Colin Brechbill, Mike Olivera, Frank Dowd, Allison Tolson, Kelly Schnorenberg, Todd Bradford, Susan Russell, Adiel Gorel, Dan Beit, and Trudy Herrell. Plaintiffs refer to these Defendants collectively as the "Seller/Broker Defendants."

Fifth, Plaintiffs are suing thirty-nine companies that provided the lending to Plaintiffs in connection with the purchase of the rental units. Plaintiffs refer to these Defendants as the "Financial Institution Defendants."

Sixth, Plaintiffs are suing Commonwealth Land Title Insurance Company ("CLTI"), one of the title companies involved in the transactions. Plaintiffs refer to this Defendant as the "Title Insurance Company Defendant."

Plaintiffs allege that the Defendants acted in concert in a "convoluted interrelationship

each with the other" to carry out the alleged scheme, which resulted in the sale of 342 of the 360 rental units in the Development, producing approximately $120 million in sales. Plaintiffs allege that the IAI Defendants, the Seller/Broker Defendants, and the Appraiser Defendants acted, directly or indirectly, with the LVCC Defendants to carry out the scheme. Plaintiffs allege that the Seller/Broker Defendants acted as agents for the Financial Institution Defendants, and that the Financial Institution Defendants thereby are charged with the fraudulent acts of the Seller/Broker Defendants.

According to Plaintiffs, no improvements were ever made to the Development as was represented, and Plaintiffs have enjoyed no interest in their purchased units. Plaintiffs allege that Defendants have managed and controlled the purchased units since their sale, utilizing them for hotel rentals and other means, or alternatively, have stripped the units of all their furniture and fixtures. The LVCC Defendants will not return possession of the purchased units to Plaintiffs and will not account for the rental income. In the end, Plaintiffs allege that they are left with "title to a downgraded physical unit only, without parking, have no interest in any of, what was identified in the subdivision map as, the 'common element,' owe homeowner association dues and levies for maintenance of 'common areas,' that the PLAINTIFFS investors did not and do not own, and are liable for millions in loans which funds were provided to the LVCC DEFENDANTS which funds were not used to create a resort property as represented." As a result, Plaintiffs have filed the present lawsuit seeking rescission of the sales, a cancellation of the related loans, a return of the monies paid, a clearance of the adverse credit reports that have resulted from defaults on the loans, an appointment of a receiver to take over the Development, and an injunction to prevent any further encumbrances against the Development.

## II.    PROCEDURAL HISTORY

Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1). Several Defendants filed motions to dismiss. On March 16, 2009, Plaintiffs filed their First Amended

1  Complaint ("FAC"). (FAC, ECF No. 126). The FAC differed significantly from the original
2  Complaint in how it classified the various groups of Defendants and in how it directed certain
3  allegations at specific Defendants. The FAC sought to remedy some of the arguments brought
4  out by the various motions to dismiss.

5  In response to the FAC, Defendant David Band filed a renewed Motion to Dismiss. On
6  June 23, 2009, the Court granted six motions to dismiss, with leave to amend. In that Order
7  (ECF No. 177), the Court noted that the FAC failed to present facts demonstrating wrongs by
8  particular defendants, as required under Rule 9(b) for actions sounding in fraud. Specifically as
9  to Band, the FAC failed to allege what section of the Securities Act of 1933 or the Securities and
10 Exchange Act of 1934 Band allegedly violated, to identify each alleged fraudulent or misleading
11 statement made by Band and why it was fraudulent or misleading, to allege facts giving rise to a
12 strong inference of the scienter required for fraud, or to otherwise comply with Rule 9(b). Nor
13 did the FAC identify what kind of "security" was allegedly at issue. The Court dismissed the
14 claims against Band as to the Securities Act of 1933 and the Securities and Exchange Act of
15 1934, the fraud claims under the Interstate Land Sales Full Disclosure Act, the RICO claims, the
16 common law fraud claims, and the civil conspiracy and constructive trust claims, all because of
17 failure to plead with the requisite particularity under Rule 9(b). The Court also dismissed all
18 claims against the Financial Institution Defendants for failure to plead agency with the requisite
19 particularity under Rule 9(b). The Court noted that Plaintiffs would have to allege which
20 Seller/Broker Defendants were agents of which Financial Institution Defendants in order to
21 implicate any of the latter in fraud. Plaintiffs would also need to identify which specific actions
22 were taken by which Seller/Broker Defendants to constitute fraud, including "time, place, and
23 specific content of the false representations as well as the identities of the parties to the
24 misrepresentations." Plaintiff then filed the SAC (ECF No. 183).

25  The Court later granted Defendant Stump's motion to dismiss the SAC, but granted

Plaintiffs leave to amend "with respect to [Stump] only." (Order 12:24–25, Mar. 15, 2010, ECF No. 326). Plaintiffs filed the Third Amended Complaint ("TAC") (ECF No. 335), which made more than the permitted amendments, adding a total of ten pages and changing the structure of the complaint in ways clearly not permitted by the order. First, Plaintiffs have re-categorized Defendants into new groups: (1) the Fraudulent Enterprise Defendants ("FEPD"); (2) the Promoter/Broker Defendants; (3) the Appraiser Defendants; (4) the Financial Institution Defendants; and (5) the Title Company Defendants. The FEPD consist of seventeen Individual FEPD and 38 Corporate FEPD, and appear to be the same, or roughly the same, as the previous LVCC Defendants. The 25 Promoter/Broker Defendants appear to be the same, or roughly the same, as the previous Seller/Broker Defendants plus the previous IAI Defendants. The Title Company Defendant is now sued in "two capacities." Second, the facts section is almost completely rewritten. It is so different from the facts section of the SAC that a line-by-line comparison to identify particular differences is impracticable. The Court has denied various Defendants' motions to strike the TAC. The Court recently quashed improper service as to several Defendants and granted their motions to dismiss for improper service but extended time to serve for ninety days and authorized service by mail or upon Defendants' attorneys because it appeared Defendants were willfully avoiding service.

### III. LEGAL STANDARDS

#### A. Rules 4(m) and 12(b)(5)

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m). A court may dismiss a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). A district court must extend time for good cause shown. *Lemoge v. United*

*States*, 587 F.3d 1188, 1198 (9th Cir. 2009). The party desiring an extension of time bears the burden of proving good cause, and "[g]ood cause exists only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Profit v. Americold Logistics, LLC*, 248 F.R.D. 293, 296 (N.D. Ga. 2008) (quoting *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (citing *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir. 1991))) (internal quotation marks omitted) (second alteration in original). However, excusable neglect may constitute good cause if a plaintiff can also show actual notice to the defendant, a lack of prejudice to the defendant, and severe prejudice to the plaintiff. *Lemoge*, 587 F.3d at 1198 n.3. Even if a party fails to show good cause, a district court may extend time for excusable neglect alone. *Id.* at 1198. A district court has discretion to extend time retroactively. *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003).

**B.     Rule 12(b)(2)**

A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). When no federal statute governs personal jurisdiction, a federal court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a forum state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[2]

---

[2] Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1). However, Nevada's due process clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009). Until 1868, when the Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction exists over a defendant who has "substantial" or "continuous and systematic" contacts with the forum state such that the assertion of personal jurisdiction over him is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). A state court has general jurisdiction over the state's own residents, for example. *Planning Grp.*, 246 P.3d at 346 ¶ 13 (citing *Milliken v. Meyer*, 311 U.S. 457, 462 (1940)).

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimal contacts with the forum such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken*, 311 U.S. at 463). The standard has been restated using different verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)

---

apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.). The Declaration of Rights that comprises Article I of the Nevada Constitution, which was adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993). During the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not debated, although several other provisions of Article I, and even Section 8, were heavily debated. *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at* http://books.google.com.

1  ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a
2  product will find its way into the forum State. Rather, it is that the defendant's conduct and
3  connection with the forum State are such that he should reasonably anticipate being haled into
4  court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))). From these
5  cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted). The third prong is itself a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

### C.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule

of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**D.  Rule 54(b)**

Rule 54(b) permits a Court to enter judgment after making a ruling partially disposing of a case, or to await its rulings on remaining causes of action in the case before entering judgment, at its discretion:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). The Ninth Circuit recently explained the process:

> Some of our cases use the phrase "Rule 54(b) certification." This is a misnomer born of confusion between Rule 54(b) and 28 U.S.C. § 1292(b), only the latter of which requires a certification. The two procedures apply to different situations. Rule 54(b) applies where the district court has entered a final judgment as to particular claims or parties, yet that judgment is not immediately appealable because other issues in the case remain unresolved. Pursuant to Rule 54(b), the district court may sever this partial judgment for immediate appeal whenever it determines that there is no just reason for delay. A court of appeals may, of course, review such judgments for compliance with the requirements of finality, but accords a great deference to the district court.

*James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002) (citations omitted). A court uses a two-step process under Rule 54(b): (1) it determines if the challenged order is a "final judgment"; and (2) it determines whether there is any just reason for delay. *See Curtiss-*

*Wright Corp. v. Gen. Elec. Corp.*, 446 U.S. 1, 7 (1980). "Absent a seriously important reason, both the spirit of Rule 1 and the interests of judicial administration counsel against certifying claims or related issues in remaining claims that are based on interlocking facts, in a routine case, that will likely lead to successive appeals." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 883 (9th Cir.2005) (reversing a district court's Rule 54(b) certification in a routine, two-party, multiple-claim employment discrimination case). The *Wood* Court stated:

> This is not a complicated case. It is a routine employment discrimination action. In such cases it is typical for several claims to be made, based on both state and federal law, and for several theories of adverse treatment to be pursued. It is also common for motions to be made for summary judgment, and to be granted in part and denied in part as district judges trim and prune a case to focus on what really is at issue for trial. At least in our experience, requesting—or granting a request for—certification in ordinary situations such as this is not routine. We believe it should not become so. As put by the Supreme Court, "[p]lainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely."

*Id.* at 879 (citation omitted).

## IV. ANALYSIS

### A. The Motions to Quash Service and Dismiss for Insufficient Service and Lack of Personal Jurisdiction

#### 1. Service of Process

Based on the record and oral arguments, the Court denies the motion and deems service to have been proper. The Court reiterates that service may be effected on any party in this case by mail or on the party's attorney. Unfortunately, both Plaintiffs' counsel's poor attempts to effect service and certain Defendants' childish attempts to avoid service have combined to necessitate this order in the interests of the efficient operation of justice.

#### 2. Personal Jurisdiction

The Werner Defendants argue there is no personal jurisdiction over them in Nevada because they reside in Florida and are not alleged to have any personal connection to Nevada

related to the TAC.  Werner is alleged to be a Florida resident. (*See* Third Am. Compl. ¶ 109(18), Mar. 31, 2010, ECF No. 335).  He is alleged to have been a manager of Flamingo Palms Villas, LLC as of 2004. (*See id.* ¶ 124).  He is also alleged to have been a founder, operator, and owner of other related entities.  This is enough to establish personal jurisdiction over Werner for the purposes of the claims arising out of alleged fraud and conspiracy related to the Flamingo Palms development in Nevada.  Similar allegations are made as to the remaining Werner Defendants.  By allegedly forming and/or managing business entities in Nevada related to a Nevada condominium investment complex, the Werner Defendants purposely availed themselves of doing business in Nevada.  The claims in the TAC arise out of these contacts.  Finally, the exercise of jurisdiction in Nevada is reasonable.  The Werner Defendants should reasonably have expected to be haled into court in Nevada for any claims arising out of the Flamingo Palms Villas complex in Las Vegas.  The Court denies the motion to dismiss for lack of personal jurisdiction.

### B.     OneWest's Motion to Dismiss for Failure to State a Claim

The Court recently permitted OneWest's motion to substitute itself as a Defendant in place of Indymac.  OneWest now moves to dismiss, arguing that only the claim for negligent misrepresentation and declaratory relief is pled against FID such as OneWest, and that OneWest is nowhere specifically mentioned.  OneWest notes that Plaintiffs do not allege that IndyMac was a preferred lender and could not do so, entitling OneWest to dismissal for the same reason the Court granted Citimorgage's motion to dismiss.  OneWest notes that IndyMac did not originate any of the loans in this case, and that OneWest is simply the current servicer and/or assignee of five loans.  The Court grants OneWest's motion to dismiss.

### C. Citimortgage's Motion for Rule 54(b) Certification

The Court denies the Motion for Rule 54(b) Certification (ECF No. 543). The Court has dismissed the only claim against Citimortgage, but will not certify for immediate appeal at this time.

### CONCLUSION

IT IS HEREBY ORDERED that the Motions to Quash and to Dismiss (ECF No. 517, 520) are DENIED.

IT IS FURTHER ORDERED that the Motions to Dismiss and to Expunge Lis Pendens (ECF Nos. 551, 555) are DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 538) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Rule 54(b) Certification (ECF No. 543) is DENIED.

IT IS FURTHER ORDERED that the Conutermotion for Reinstatement of Claims Against Citimortgage (ECF No. 605) is DENIED.

IT IS SO ORDERED.

Dated this 31st day of May, 2011.

_____
ROBERT C. JONES
United States District Judge