1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8
   FRAN DONOVAN,                          )
9                                          )
                     Plaintiff,            )
10                                         )          2:08-cv-01675-RCJ-RJJ
           vs.                             )
11                                         )
   FLAMINGO PALMS VILLAS, LLC et al.,      )          **ORDER**
12                                         )
                     Defendants.           )
13  _____)

14         The present case arises out of an alleged conspiracy to defraud investors in a

15  condominium development in Las Vegas.  Plaintiffs are those who purchased units in the

16  Development.  Defendants are those who developed, promoted, sold, appraised, and financed the

17  Development.  The Court has already ruled on dozens of motions to dismiss and motions for

18  summary judgment.  Defendant David Schwarz has now moved to dismiss the Third Amended

19  Complaint ("TAC") for failure to state a claim, and Defendant Sarasota Coast Investors, LLC

20  ("Sarasota") has moved to dismiss the Crossclaim filed against it by Defendant Las Vegas Cay

21  Club Homeowners Association ("the HOA").  For the reasons given herein, the Court denies the

22  motion to dismiss the TAC as against Schwarz and grants the motion to dismiss the HOA's

23  Crossclaim in part, with leave to amend in part.

24  **I.     FACTS**

25         Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium

1    units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the

2    "Development").  Originally, there were 139 Defendants, 121 of whom remained in the Second

3    Amended Complaint ("SAC") (ECF No. 183).  Defendants are individuals and entities who

4    allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the

5    Development.  The Development consists of an approximately 12-acre plot of land on which sit

6    sixteen three-story apartment buildings, containing a total of 360 rental units.  The three

7    apartment buildings occupy 2.64 acres.  The remaining 9.44 acres consist of several hundred

8    parking spaces, swimming pools, and other open land (the "Common Area").

9          Beginning in 2004, Defendants began promoting and selling the 360 units in the

10   Development to buyers.  Defendants promoted the Development as a "resort community" that

11   would be developed into a hotel.  Initially, and before assuming its current name, the

12   Development was called the Las Vegas Cay Club Resort & Marina.  Defendants allegedly

13   represented that the Development already boasted numerous valuable amenities, such as large

14   covered patios, weight rooms, and spas, and that Defendants planned to enhance the

15   Development with many other amenities, such as a game room, a water park, a restaurant, and

16   conference facilities.  By paying a non-refundable $5,000 payment, Plaintiffs were allowed to

17   enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit

18   reserved for purchase.  Plaintiffs were later provided with a price list for the units, ranging from

19   $199,000 to $499,900.  After Plaintiffs invested, Defendants circulated various brochures and

20   letters to Plaintiffs, informing Plaintiffs of the status of the Development.  These letters and

21   brochures described or displayed images of the various improvements that were being done to

22   the Development.  Defendants also circulated a map of the Development.

23         Plaintiffs allege that the deeds they received in the purchase of each unit represented that

24   Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which

25   included parking spaces, swimming pools, and many other valuable amenities that Defendants

1    promised to add to the Development.  After the deeds were signed, Plaintiffs allege that

2    Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the

3    Development did not in fact include the Common Area, but were limited to their individually

4    purchased rental units and the area common to their particular buildings.  As a result, Plaintiffs'

5    purchased units did not even include any of the Development's parking spaces.  Plaintiffs

6    contend that the representations made in the fifty-seven page declaration conflicted with the

7    advertising and other promotional representations made by Defendants, the deeds, and the

8    appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

9         Plaintiffs are suing several groups of Defendants.  First, Plaintiffs are suing those

10   individuals who were directly behind purchasing the Development and concocting the alleged

11   scheme, as well as the companies they formed to carry out the scheme.  These Defendants

12   include David Schwarz, F. Dave Clark, W. Scott Callahan, David Band, Stanley Kane, Craig

13   Holt, Jeffrey Aeder, Kevin Connor, Harvey Birdman, Herbert Hirsch, Michael Werner, Marc

14   Roberts, Harris Friedman, Donneil Hecer, and Louis Birdman.  Entity Defendants in this group

15   include nineteen entities formed, owned, and operated by Schwarz and Clark; two entities

16   formed, owned, and operated by Schwarz, Callahan, and Clark; one entity formed, owned, and

17   operated by Clark alone; three of Band's companies; one entity formed by Holt and Schwarz;

18   one entity formed by Aeder and Connor; and twelve entities formed, owned, and operated by

19   Harvey Birdman, Hirsch, Werner, Roberts, Friedman, Hecer, and/or Louis Birdman.  Plaintiffs

20   allege that these individuals owned, operated, or managed many entities in an effort to carry out

21   the alleged scheme, which entities are also named as Defendants.  Collectively, Plaintiffs call

22   these Defendants the "LVCC Defendants."

23        Second, Plaintiffs are suing individuals who formed, owned, and/or operated a company

24   called International Association of Investors, LLC ("IAI").  These individuals include Don

25   Burnham, Justin Burnham, Marc Burnham, George Homick, and Cindy Richichi.  IAI was

1    allegedly significantly involved with getting buyers to invest in the Development.  Plaintiffs are

2    also suing IAI itself, and they refer to these Defendants collectively as the "IAI Defendants."

3           Third, Plaintiffs are suing two individuals, Dianne Sealey and Faye Rivera, who served

4    as appraisers of the Development's rental units.  Plaintiffs are also suing The Appraisal Team,

5    LLC, the company owned or operated by Sealey and Rivera.  Plaintiffs refer to these Defendants

6    collectively as the "Appraiser Defendants."  Plaintiffs allege that the Appraiser Defendants were

7    agents of the LVCC Defendants and worked with them to carry out the scheme by overvaluing

8    the rental units by as much as 80%.

9           Fourth, Plaintiffs are suing individuals or companies that acted as sales agents for the

10   Development's rental units or who acted as loan brokers in connection with the financing

11   obtained to purchase the rental units:  Barry Graham, Phil Graham, Georgia Ann Johnson,

12   Mortgage Loan Specialists, Inc. (formed by Johnson), Ross Pickard, John Sinclair, Ricky Stokes,

13   Fred Clark, Colin Brechbill, Mike Olivera, Frank Dowd, Allison Tolson, Kelly Schnorenberg,

14   Todd Bradford, Susan Russell, Adiel Gorel, Dan Beit, and Trudy Herrell.  Plaintiffs refer to

15   these Defendants collectively as the "Seller/Broker Defendants."

16          Fifth, Plaintiffs are suing thirty-nine companies that provided the lending to Plaintiffs in

17   connection with the purchase of the rental units.  Plaintiffs refer to these Defendants as the

18   "Financial Institution Defendants."

19          Sixth, Plaintiffs are suing Commonwealth Land Title Insurance Company ("CLTI"), one

20   of the title companies involved in the transactions.  Plaintiffs refer to this Defendant as the "Title

21   Insurance Company Defendant."

22          Plaintiffs allege that the Defendants acted in concert in a "convoluted interrelationship

23   each with the other" to carry out the alleged scheme, which resulted in the sale of 342 of the 360

24   rental units in the Development, producing approximately $120 million in sales.  Plaintiffs allege

25   that the IAI Defendants, the Seller/Broker Defendants, and the Appraiser Defendants acted,

1   directly or indirectly, with the LVCC Defendants to carry out the scheme.  Plaintiffs allege that

2   the Seller/Broker Defendants acted as agents for the Financial Institution Defendants, and that

3   the Financial Institution Defendants thereby are charged with the fraudulent acts of the

4   Seller/Broker Defendants.

5   According to Plaintiffs, no improvements were ever made to the Development as was

6   represented, and Plaintiffs have enjoyed no interest in their purchased units.  Plaintiffs allege that

7   Defendants have managed and controlled the purchased units since their sale, utilizing them for

8   hotel rentals and other means, or alternatively, have stripped the units of all their furniture and

9   fixtures.  The LVCC Defendants will not return possession of the purchased units to Plaintiffs

10  and will not account for the rental income.  In the end, Plaintiffs allege that they are left with

11  "title to a downgraded physical unit only, without parking, have no interest in any of, what was

12  identified in the subdivision map as, the 'common element,' owe homeowner association dues

13  and levies for maintenance of 'common areas,' that the PLAINTIFFS investors did not and do

14  not own, and are liable for millions in loans which funds were provided to the LVCC

15  DEFENDANTS which funds were not used to create a resort property as represented."  As a

16  result, Plaintiffs have filed the present lawsuit seeking rescission of the sales, a cancellation of

17  the related loans, a return of the monies paid, a clearance of the adverse credit reports that have

18  resulted from defaults on the loans, an appointment of a receiver to take over the Development,

19  and an injunction to prevent any further encumbrances against the Development.

20  **II.     PROCEDURAL HISTORY**

21  Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1).  Several

22  Defendants filed motions to dismiss.  On March 16, 2009, Plaintiffs filed their First Amended

23  Complaint ("FAC"). (FAC, ECF No. 126).  The FAC differed significantly from the original

24  Complaint in how it classified the various groups of Defendants and in how it directed certain

25  allegations at specific Defendants.  The FAC sought to remedy some of the arguments brought

1   out by the various motions to dismiss.

2           In response to the FAC, Defendant David Band filed a renewed Motion to Dismiss.  On

3   June 23, 2009, the Court granted six motions to dismiss, with leave to amend.  In that Order

4   (ECF No. 177), the Court noted that the FAC failed to present facts demonstrating wrongs by

5   particular defendants, as required under Rule 9(b) for actions sounding in fraud.  Specifically as

6   to Band, the FAC failed to allege what section of the Securities Act of 1933 or the Securities and

7   Exchange Act of 1934 Band allegedly violated, to identify each alleged fraudulent or misleading

8   statement made by Band and why it was fraudulent or misleading, to allege facts giving rise to a

9   strong inference of the scienter required for fraud, or to otherwise comply with Rule 9(b).  Nor

10  did the FAC identify what kind of "security" was allegedly at issue.  The Court dismissed the

11  claims against Band as to the Securities Act of 1933 and the Securities and Exchange Act of

12  1934, the fraud claims under the Interstate Land Sales Full Disclosure Act, the RICO claims, the

13  common law fraud claims, and the civil conspiracy and constructive trust claims, all because of

14  failure to plead with the requisite particularity under Rule 9(b).  The Court also dismissed all

15  claims against the Financial Institution Defendants for failure to plead agency with the requisite

16  particularity under Rule 9(b).  The Court noted that Plaintiffs would have to allege which

17  Seller/Broker Defendants were agents of which Financial Institution Defendants in order to

18  implicate any of the latter in fraud.  Plaintiffs would also need to identify which specific actions

19  were taken by which Seller/Broker Defendants to constitute fraud, including "time, place, and

20  specific content of the false representations as well as the identities of the parties to the

21  misrepresentations."  Plaintiff then filed the SAC (ECF No. 183).

22          The Court later granted Defendant Stump's motion to dismiss the SAC, but granted

23  Plaintiffs leave to amend "with respect to [Stump] only." (Order 12:24–25, Mar. 15, 2010, ECF

24  No. 326).  Plaintiffs filed the Third Amended Complaint ("TAC") (ECF No. 335), which made

25  more than the permitted amendments, adding a total of ten pages and changing the structure of

1   the complaint in ways clearly not permitted by the order.  First, Plaintiffs have re-categorized

2   Defendants into new groups: (1) the Fraudulent Enterprise Defendants ("FEPD"); (2) the

3   Promoter/Broker Defendants; (3) the Appraiser Defendants; (4) the Financial Institution

4   Defendants; and (5) the Title Company Defendants.  The FEPD consist of seventeen Individual

5   FEPD and 38 Corporate FEPD, and appear to be the same, or roughly the same, as the previous

6   LVCC Defendants.  The 25 Promoter/Broker Defendants appear to be the same, or roughly the

7   same, as the previous Seller/Broker Defendants plus the previous IAI Defendants.  The Title

8   Company Defendant is now sued in "two capacities."  Second, the facts section is almost

9   completely rewritten.  It is so different from the facts section of the SAC that a line-by-line

10  comparison to identify particular differences is impracticable.  The Court has denied various

11  Defendants' dispositive motions against the TAC.  Schwartz has now filed his own motion to

12  dismiss the TAC.  Also, Sarasota has moved to dismiss the HOA's Crossclaim.

13  **III.   LEGAL STANDARDS**

14          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

15  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

16  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

17  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

18  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

19  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

20  F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

21  failure to state a claim, dismissal is appropriate only when the complaint does not give the

22  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

23  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

24  sufficient to state a claim, the court will take all material allegations as true and construe them in

25  the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,

550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling

on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

*& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

whose contents are alleged in a complaint and whose authenticity no party questions, but which

are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

motion to dismiss" without converting the motion to dismiss into a motion for summary

judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

*Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

Cir. 2001).

## IV.    ANALYSIS

### A.    Schwarz's Motion to Dismiss the TAC

Schwarz argues that the TAC has not cured the defects that caused the Court to dismiss

the First Amended Complaint ("FAC") as against David Band.  A securities fraud defendant

must have actually made the fraudulent statement and have had "ultimate authority over the

statement, including its content and whether and how to communicate it." *Janus Capital Grp.,*

*Inc. v. First Derivative Traders*, No. 09-525, Slip op. at 6 (June 13, 2011).  Schwarz argues that

the TAC lumps Schwarz in with many other Defendants, as the FAC did, and therefore does not

satisfy the requirements of Rule 9(b) with respect to the ILSA, RICO, or misrepresentation

claims.  He is not correct.  The TAC mentions Schwarz in sixteen paragraphs: (1) to identify him

as a Florida resident (Third Am. Compl. ¶ 109(17), Mar. 31, 2010, ECF No. 335); (2) to include

him under the FEPD (*Id.* ¶ 125); (3) to note that he and Clark formed, operated, and owned

twenty-two entities in order to carry out fraud (*Id.* ¶¶ 132–33); (4) that Schwarz was once a

manager of Flamingo Palms Villas, LLC and DC704-LLC (*Id.* ¶¶ 194–95); (5) that Schwarz,

Clark, and Callahan formed the HOA (*Id.* ¶ 211); (6) that Schwarz was a director of the HOA

and managed Flamingo Palms Villas, LLC (*Id.* ¶ 213); (7) that Schwarz, Clark, and Callahan

field the CC&R that excluded the Common Area that was included on the plat map (*Id.* ¶¶

214–16); (8) that Schwarz and other Defendants participated in other alleged frauds in Florida

(*Id.* ¶ 278); and (9) that Schwarz was a manager of Cristal Clear Commerce LLC,  DC 7 LLC,

DC 711 LLC, and CC704 LLC (*Id.* ¶¶ 280–82, 292).  The third and seventh allegations, as

numbered *supra*, are sufficient to state a fraud claim against Schwarz.  Also, there is at least

specific jurisdiction over Schwarz in Nevada based on these allegations, and perhaps even

general jurisdiction.

### B.    Sarasota's Motion to Dismiss the Crossclaim

In its answer to the TAC, the HOA included a Crossclaim against Sarasota, Flamingo

Palms Villas, LLC, and JDI Craps, LLC. (*See* Answer, Countercl., and Crosscl. 24, Mar. 17,

2011, ECF No. 566).  The Crossclaim lists five causes of action: (1) Quiet Title; (2), (3), (5)

Declaratory Judgment; and (4) Slander of Title.  Only the third through fifth crossclaims are

brought against Sarasota.

Sarasota argues that the HOA has failed to satisfy certain perquisites to suit by a

homeowners' association in Nevada.  The HOA responds mainly by arguing the merits of its

crossclaims, but Sarasota has not challenged the crossclaims on the merits.  The HOA does not

adequately address the gravamen of Sarasota's motion, which is that the HOA has not obtained

the requisite approval from its members to bring the crossclaim.

In Nevada, a homeowners' association must as a general rule obtain the permission of its

members to bring a lawsuit:

> The association shall provide written notice to each unit's owner of a meeting at which the commencement of a civil action is to be considered at least 21 calendar days before the date of the meeting.  Except as otherwise provided in this subsection, the association may commence a civil action only upon a vote or written agreement of the owners of units to which at least a majority of the votes of the members of the association are allocated.  The provisions of this subsection do not apply to a civil action that is commenced:
>
> (a) To enforce the payment of an assessment;
>
> (b) To enforce the declaration, bylaws or rules of the association;
>
> (c) To enforce a contract with a vendor;
>
> (d) To proceed with a counterclaim; or
>
> (e) To protect the health, safety and welfare of the members of the association.
>
> If a civil action is commenced pursuant to this paragraph without the required vote or agreement, the action must be ratified within 90 days after the commencement of the action by a vote or written agreement of the owners of the units to which at least a majority of votes of the members of the association are allocated.  If the association, after making a good faith effort, cannot obtain the required vote or agreement to commence or ratify a civil action, the association may thereafter seek to dismiss the action without prejudice for that reason only if a vote or written agreement of the owners of the units to which at least a majority of votes of the members of the association are allocated was obtained at the time the approval to commence or ratify the action was sought.

Nev. Rev. Stat. § 116.31088(1)(a)–(e).  Sarasota is itself a unit owner in the Development, so it

has standing to challenge the HOA's failure to follow procedural requirements. *See id.*

§ 116.31088(3).  The HOA notes that it may bring and defend claims on matters affecting the

common-interest community under section 116.3102, but it fails to address the procedural

requirements under section 116.31088.  Sarasota notes that there is no evidence the HOA has the

1  required approval, and the crossclaim does not fit under any of the enumerated exceptions.

2       Next, the HOA argues that the Crossclaim is a "necessary appendage" to its compulsory

3  counterclaims. But Sarasota correctly notes that crossclaims are always permissive and are not

4  "necessary appendages" to counterclaims, as the HOA argues. *See Gaddis v. Allison*, 234 B.R.

5  805, 814 (D. Kan. 1999) ("Unlike counterclaims, which are compulsory or permissive,

6  crossclaims are always permissive. 6 Charles Alan Wright et al., *Federal Practice and*

7  *Procedure: Civil 2d* § 1431, at 236. Therefore, '[a] party who decides not to bring his claim

8  under Rule 13(g) will not be barred by res judicata, waiver, or estoppel from asserting it in a later

9  action, as he would if the claim were a compulsory counterclaim under Rule 13(a).' *Id.*"). The

10  crossclaims against Sarasota are therefore a new action that must be approved or ratified by the

11  HOA membership. The Nevada Legislature chose not to include "or crossclaim" after

12  "counterclaim" in subsection (1)(d). In fact, the plain language of the statute indicates that any

13  kind of counterclaim is exempted, whether compulsory or permissive, but crossclaims are simply

14  not included under the enumerated exceptions. Perhaps this was an oversight, but even if so, the

15  Legislature must correct it, not a court. The statute as written permits a homeowners'

16  association to proceed with a defense and counterclaims without permission from the

17  homeowners, but it does not permit a crossclaim without permission. The HOA argues that if it

18  were to attempt to bring a future action in Nevada state court, it may be collaterally estopped

19  even though the crossclaim here is permissive, because Nevada follows an unorthodox, minority

20  rule in this area. *See Exec. Mgmt., Ltd. v. Ticor Title Ins Co.*, 963 P.2d 465, 835–39 (Nev. 1998).

21  But this is irrelevant to the fact that the HOA simply may not bring the present crossclaims

22  unless and until it obtains the required permission from its members. The statute exempts

23  "counterclaim[s]," not "claims which may be precluded if not brought in existing litigation."

24       At oral argument, the HOA also argued that the Crossclaim was brought to force payment

25  of an assessment. It does appear that one of the declaratory judgment crossclaims against

Page 11 of 12

1   Sarasota seeks a declaration that Sarasota is liable to pay HOA fees for those units it owns.  The

2   HOA also argued that the law requires CC&R to include common elements, but subsection (b) of

3   the statute only creates an exemption for actions to enforce the HOA's own ruled, not the laws of

4   the state.

5                                        **CONCLUSION**

6          IT IS HEREBY ORDERED that the Motion to Dismiss Crossclaim (ECF No. 585) is

7   GRANTED in part, with leave to amend in part.  All crossclaims against Sarasota are dismissed,

8   except the crossclaim for declaratory judgment concerning HOA fees it is alleged to owe.  The

9   HOA may also amend the dismissed portions of the crossclaim within 120 days from the date of

10  this order if it can obtain permission to do so from a majority of those HOA members voting,

11  after 30 days notice to all HOA members, and after discounting any vote by Sarasota or any

12  other Defendants.  Sarasota may not lobby HOA members against such a vote or otherwise

13  interfere.

14         IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 661) is DENIED.

15         IT IS SO ORDERED.

16  Dated this 5th day of October, 2011.

17

18  _____
                ROBERT C JONES
19              United States District Judge

20

21

22

23

24

25