**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| FRAN DONOVAN, | ) | |
|            Plaintiff, | ) | |
| vs. | ) | 2:08-cv-01675-RCJ-RJJ |
| FLAMINGO PALMS VILLAS, LLC et al., | ) | **ORDER** |
|            Defendants. | ) | |

The present case arises out of an alleged conspiracy to defraud investors in a condominium development in Las Vegas. Pending before the Court is Defendants' Motion for Determination of Good Faith Settlement (ECF No. 695). For the reasons given herein, the Court denies the motion.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiffs are eighty-seven individuals who purchased condominium units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the "Development"). Originally, there were 139 Defendants, 121 of whom remained in the Second Amended Complaint ("SAC") (ECF No. 183). Defendants are individuals and entities who allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development. The Development consists of an approximately 12-acre plot of land with sixteen three-story apartment buildings, containing a total of 360 rental units. The apartment buildings

1  occupy 2.64 acres. The remaining 9.44 acres consist of several hundred parking spaces,
2  swimming pools, and other open land (the "Common Area").

3  Beginning in 2004, Defendants began promoting and selling the 360 units in the
4  Development to buyers. Defendants promoted the Development as a "resort community" that
5  would be developed into a hotel. Initially, and before assuming its current name, the
6  Development was called the Las Vegas Cay Club Resort & Marina. Defendants allegedly
7  represented that the Development already boasted numerous valuable amenities, such as large
8  covered patios, weight rooms, and spas, and that Defendants planned to enhance the
9  Development with many other amenities, such as a game room, a water park, a restaurant, and
10  conference facilities. By paying a non-refundable $5,000 payment, Plaintiffs were allowed to
11  enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit
12  reserved for purchase. Plaintiffs were later provided with a price list for the units, ranging from
13  $199,000 to $499,900. After Plaintiffs invested, Defendants circulated various brochures and
14  letters to Plaintiffs, informing Plaintiffs of the status of the Development. These letters and
15  brochures described or displayed images of the various improvements that were being done to
16  the Development. Defendants also circulated a map of the Development.

17  Plaintiffs allege that the deeds they received represented that Plaintiffs had an interest not
18  only in their purchased units, but also in the Common Area, which included parking spaces,
19  swimming pools, and many other valuable amenities that Defendants promised to add to the
20  Development. After the deeds were signed, Plaintiffs allege that Defendants circulated a fifty-
21  seven page declaration (the "Declaration") stating that Plaintiffs' interests in the Development
22  did not in fact include the Common Area, but were limited to their individually purchased rental
23  units and the areas common to their particular buildings. As a result, Plaintiffs' purchased units
24  did not even include any of the Development's parking spaces. Plaintiffs contend that the
25  representations made in the Declaration conflicted with the advertising and other promotional

representations made by Defendants, the deeds, and the appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

Plaintiffs filed the Complaint on November 26, 2008. The Court has since ruled on dozens of dispositive motions. The operative version of the Complaint is the Third Amended Complaint ("TAC") (ECF No. 335). Plaintiffs have categorized Defendants therein into several groups: (1) the Fraudulent Enterprise Defendants ("FEPD"); (2) the Promoter/Broker Defendants; (3) the Appraiser Defendants; (4) the Financial Institution Defendants; and (5) the Title Company Defendants. The Court has denied several dispositive motions against the TAC. The Appraiser Defendants consist of Dianne Sealey, Faye Rivera, and their company The Appraisal Team, LLC, through which they appraised the Development's rental units. Plaintiffs allege that the Appraiser Defendants were agents of other Defendants and worked with them to carry out the alleged scheme by overvaluing the rental units by as much as 80%. The Appraiser Defendants have reached a settlement with Plaintiffs and now ask the Court to make a determination that the settlement is entered into in good faith pursuant to Nevada Revised Statutes ("NRS") section 17.245.

## II. LEGAL STANDARDS

Under Nevada law, a court's declaration that a settlement is entered into in good faith has specific legal effects:

> 1. When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (b) It discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.

> 2. As used in this section, "equitable indemnity" means a right of indemnity that is created by the court rather than expressly provided for in a written agreement.

Nev. Rev. Stat. § 17.245. In 1983, a court of this District anticipated that the Nevada Supreme Court would adopt the rationale of the California courts in interpreting "good faith" under the statute. *See Velsicol Chem. Corp. v. Davidson*, 811 P.2d 561, 563 (Nev. 1991) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 927 (D. Nev. 1983) (Bechtle, J.) ("Factors to be considered by the Court in assessing whether a settlement is in good faith is [sic] the amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants.") (alteration in *Davidson*)). The Nevada Supreme Court, however, rejected the limitations of California's five-factor test, ruling instead that "determination of good faith [is] left to the discretion of the trial court based upon all relevant facts available, and . . . in the absence of an abuse of that discretion, the trial court's findings [will] not be disturbed." *Id.*

### III. ANALYSIS

Countrywide Financial Corp. and Bank of America Corp. (collectively, the "Banks") have opposed the motion. The Appraisal Defendants argue under the "California factors." Although the Nevada Supreme Court has ruled that these factors are not limiting or dispositive in Nevada, they may be considered under the "all relevant facts available" standard the Court adopted in *Davidson*.

First, the Appraisal Defendants argue that the total settlement amount of $60,000 is reasonable in and of itself. The Court finds that this amount is not reasonable in light of Plaintiffs' allegations. The $60,000 settlement represents an average approximately $690 for each of the eighty-seven Plaintiffs. The TAC implicates the Appraiser Defendants under two causes of action: (7) professional negligence; and (11) negligent misrepresentation. Specifically,

1  Plaintiffs allege that they purchased units at prices between $300,000 and $600,000 based on the
2  Appraiser Defendants' "grossly negligent appraisals" of $300,000 to $500,000, when the units
3  were in fact worth only $40,000 to $60,000 because the common elements were not in fact
4  included in the deeds and certain promised improvements were never made. (*See* Third Am.
5  Compl. ¶¶ 101–02, 123, 221, 334, 336, Mar. 31, 2010, ECF No. 335).  The harm alleged due to
6  the negligent appraisals is therefore on the order of $350,000 per unit, and the settlement
7  represents approximately 1/500th of the alleged harm.

8    Second, the Appraiser Defendants argue that the allocation of the settlement proceeds
9  among Plaintiffs is fair.  There is no evidence provided of how the proceeds will be divided, but
10 the Court presumes they are to be distributed equally.

11   Third, the Appraiser Defendants argue that the settlement nearly extinguishes their
12 insurance coverage.  Attorney Dustin A. Johnson attests that the Appraisal Defendants'
13 insurance policy had a limit of $500,000, and that as of June 3, 2011, the remaining amount on
14 the policy was $123,561.74, leaving $63,561.74 after the $60,000 settlement. (*See* Johnson.
15 Decl. ¶¶ 2–5, Sept. 23, 2011, ECF No. 719-4).  The Banks note that the Appraisal Defendants
16 have not produced the policy.  Also, it is not clear why less than half of the remaining policy
17 limit has been allocated to settlement.

18   Fourth, the Appraisal Defendants argue that they are in no financial condition to satisfy
19 any judgment after the policy limits are depleted.  The parties appear to agree that The Appraisal
20 Team is a defunct entity with no assets.[1]  Rivera attests that she is employed with the Clark
21 County School District, that her husband is unemployed, that she is in default on a home

---

[1] It appears that The Appraisal Team was either a sole proprietorship by Sealey or a general partnership between Rivera and Sealey. (*See* Sealey Decl. ¶ 5, Sept. 26, 2011, ECF No. 719-3).  Although Plaintiffs name "The Appraisal Team, LLC," the Nevada Secretary of State website indicates no such entity, either active or defunct.  It is possible Rivera and Sealey used the "LLC" label on their partnership without realizing that the label signifies a particular type of business entity.

1  mortgage in which she has negative equity, and that she has "no assets of any kind that could
2  satisfy a judgment against me." (*See* Rivera Decl. ¶¶ 5–8, Sept. 23, 2011, ECF No. 719-2).
3  Sealey attests that due to her recent diagnoses of cancer and diabetes she has been unable to
4  work, that her only source of income is social security, and that she owns no real property,
5  though she does not attest quite as broadly as Rivera that she has no other assets with which to
6  satisfy a judgment. (*See* Sealey Decl. ¶¶ 8–10, Sept. 26, 2011, ECF No. 719-3).

Fifth, the Appraiser Defendants argue that there has been no fraud or collusion between them and Plaintiffs.

Although the Court cannot prevent the settlement, it will not at this time declare that this settlement is made in good faith under section 17.245. The settlement provides for a tiny fraction of the damages alleged and does not even deplete the known available insurance coverage. Also, it is not clear what percentage of the settlement is to be allocated to attorney's fees. Finally, the Appraisal Defendants have not convinced the Court of their complete inability to satisfy any greater judgment. For example, both of the individual Appraisal Defendants are married, and Nevada is a community property state where community property may be attached to satisfy a judgment debt arising out of a spouse's actions that were intended to benefit the marital community, but the Appraisal Defendants have not attested as at all to the extent of their community property.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Determination of Good Faith Settlement (ECF No. 695) is DENIED.

IT IS SO ORDERED.

Dated this 7th day of December, 2011.

_____
ROBERT C. JONES
United States District Judge