# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| FRAN DONOVAN et al., )<br>    )<br>        Plaintiffs, )<br>    )<br>    vs. )<br>    )<br>FLAMINGO PALMS VILLAS, LLC et al., )<br>    )<br>        Defendants. )<br>_____)  | 2:08-cv-01675-RCJ-RJJ<br><br>**ORDER** |

This case arises out of an alleged conspiracy to defraud investors in a condominium development in Las Vegas. Three motions to dismiss, seven motions for summary judgment, and six discovery-related motions are pending before the Court.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the "Development"). Originally, there were 139 Defendants, 121 of whom remained in the Second Amended Complaint ("SAC") (ECF No. 183). Defendants are individuals and entities who allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development. The Development consists of an approximately 12-acre plot of land on which sit sixteen three-story apartment buildings, containing a total of 360 rental units. The three apartment buildings occupy 2.64 acres. The remaining 9.44 acres consist of several hundred

parking spaces, swimming pools, and other open land (the "Common Area").

Beginning in 2004, Defendants began promoting and selling the 360 units in the Development to buyers. Defendants promoted the Development as a "resort community" that would be developed into a hotel. Initially, and before assuming its current name, the Development was called the Las Vegas Cay Club Resort & Marina. Defendants allegedly represented that the Development already boasted numerous valuable amenities, such as large covered patios, weight rooms, and spas, and that Defendants planned to enhance the Development with many other amenities, such as a game room, a water park, a restaurant, and conference facilities. By paying a non-refundable $5,000 payment, Plaintiffs were allowed to enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit reserved for purchase. Plaintiffs were later provided with a price list for the units, ranging from $199,000 to $499,900. After Plaintiffs invested, Defendants circulated various brochures and letters to Plaintiffs, informing Plaintiffs of the status of the Development. These letters and brochures described or displayed images of the various improvements that were being done to the Development. Defendants also circulated a map of the Development.

Plaintiffs allege that the deeds they received in the purchase of each unit represented that Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which included parking spaces, swimming pools, and many other valuable amenities that Defendants promised to add to the Development. After the deeds were signed, Plaintiffs allege that Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the Development did not in fact include the Common Area, but were limited to their individually purchased rental units and the area common to their particular buildings. As a result, Plaintiffs' purchased units did not even include any of the Development's parking spaces. Plaintiffs contend that the representations made in the fifty-seven page declaration conflicted with the advertising and other promotional representations made by Defendants, the deeds, and the

appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1). The Court has ruled on dozens of dispositive motions. The operative version of the Complaint is the Third Amended Complaint ("TAC") (ECF No. 335). Plaintiffs have categorized Defendants therein into several groups: (1) the Fraudulent Enterprise Defendants ("FEPD"); (2) the Promoter/Broker Defendants; (3) the Appraiser Defendants; (4) the Financial Institution Defendants; and (5) the Title Company Defendants. Including pending motions not addressed in the present order but set for oral argument next month, the Court has had to consider forty (40) motions to dismiss and fourteen (14) motions for summary judgment in this case.

## II.   LEGAL STANDARDS

### A.   Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.   Summary Judgment**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and

determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   ANALYSIS

#### A.   Motions to Dismiss (ECF Nos. 798, 852, 891)

In Motion No. 798, Defendants ask the Court to dismiss for failure to prosecute those Plaintiffs as to whom Plaintiffs' counsel recently withdrew his representation due to those Plaintiffs' failure to pay fees or communicate with counsel.  Defendants identify thirty-four such Plaintiffs, but in a recent order, the Court noted that three of these Plaintiffs had reconciled with counsel, so it granted counsel's request to withdraw only as to the following thirty-one Plaintiffs: Sergio Cabanas; Stephanie Cabanas; Jamie L. Castagna; Charles Corsentino; Cindy K. Corsentino; Ryan Daw; Chad Epeneter; Kevin D. Forbes; Stacey T. Forbes; Leo Gillespie; David Goettge; Lisa Hatton; Alan Jackson; Patricia Jackson; Henry Jennings; Heather Jennings; Craig Korotko; Christine Korotko; Thomas Marr; Gale Marr; Gaurana Nanavati; Daniel A. Nell; Kelly S. Nell; Matthew Phillips; Mirjam Phillips; Dani M. Potter; Mark Richards; Gary Rickling; Elizabeth A. Rickling; Drew Secaffico; and Sharon H. Stola.  Plaintiffs requested an extension to respond to the present motion until January 9, 2012 but have never responded.  This constitutes consent to granting the motion.  *See* L.R. Civ. Prac. 7-2(d).  The Court grants the motion in part, dismissing the thirty-one Plaintiffs named herein for failure to prosecute.

In Motion No. 852, different Defendants separately ask the Court to dismiss these same thirty-one Plaintiffs for failure to prosecute.  No Plaintiff has responded.  The Court grants the motion.  In Motion No. 891, Plaintiff David Goettige separately requests the dismissal of his own claim, with prejudice, with each side to bear its own costs and fees.  No Defendant has responded except to indicate non-opposition.  The Court grants the motion.

**B.     Motions for Summary Judgment (ECF Nos. 850, 851, 854, 855, 887, 889, 895)**

In Motion No. 850, Defendants M. Werner, H. Friedman, H. Birdman, H. Hirsch, L. Birdman, D. Hecker, Sunvest Resort Communities, LLC, Flamingo Palms Investment Group, LLC, Sunvest Communities USA, LLC, Sunvest-Vegas Acquisitions, LLC, Vegas Acquisitions, LLC, Sunvest-Vegas Acquisitions II, LLC, Flamingo Palms Manager, LLC, Flamingo Palms Manager, Inc., and Flamingo Palms, SPE (collectively, "Sunvest Defendants") ask the Court to grant summary judgment as to all claims against them.  In Motion No. 851, Defendant David W. Schwartz requests summary judgment as to all claims against him.  In Motion No. 854, Defendants Kevin Connor, Jeffrey Aeder, JDI Loans, LLC, JDI Realty, LLC, and JDI Craps, LLC (collectively, "JDI Defendants") request summary judgment as to all claims against them.  In Motion No. 855, Defendants Stump, Storey, Callahan, and Dietrich, P.A., and Scott Callahan (collectively, "Stump Defendants") request summary judgment as to all claims against them.  In Motion No. 887, Defendant Suntrust Mortgage, Inc. requests summary judgment as to all claims against it.  In Motion No. 889, Defendant Commonwealth Land Title Insurance Co. requests summary judgment as to all claims against it.  In Motion No. 895, Defendants Countrywide Financial Corp. and Bank of America Corp. (collectively, "Lender Defendants") request summary judgment as to all claims against them.

The Court grants the motions, except for Motion No. 889.  Except for the response to Motion No. 889, Plaintiffs did not timely respond.  Responses were due between February 16, 2012 and March 9, 2012, with extensions granted to March 20, 2012.  Plaintiffs responded to Motions No. 850, 851, and 854 via attachments to motions to file excess pages on April 13 and 19, 2012, approximately a month after the deadline, as extended.  Plaintiffs responded to Motion No. 895 on May 18, two months after the deadline, as extended, and too close to the hearing for Defendants to reply in any case.  Plaintiffs made no response at all to Motions No. 855 or 887.

The Court will grant the motions (except for Motion No. 889) pursuant to Local Rule 7-

2(d), as Plaintiffs' failure to timely respond constitutes consent to granting them.  The Court does this with some reluctance, because it is possible that a wrong may have been committed in this case, although it appears that for the most part the FEPD are the only proper targets of the lawsuit.  The Court reluctantly denied previous motions to dismiss the TAC, although it is difficult in many cases to see how certain Defendants are properly implicated therein, and the case has not proceeded expeditiously.  Moreover, the case has been fraught with failures to properly serve Defendants, failures to meet deadlines, and recently a settlement proposal egregiously unfair to Plaintiffs based upon the allegations made in the TAC.  The Court concludes that Attorney Hyman's practice is simply too small to competently handle the massive lawsuit he has filed, especially from out of state.  The Court will no longer prolong this case unnecessarily and will strictly enforce the procedural rules, even if that means granting dispositive motions for failure to timely respond.

　　　　Failures to timely respond cause the Court to expend extra resources.  The Court performs its research for upcoming hearings once the pleadings are in or overdue.  When the research is complete for a hearing, the Court begins its research for upcoming hearings in other cases.  The Court has a very heavy docket and the District is in a judicial emergency.  Although missing a deadline by a day or two is often excusable and will typically not require the Court to revisit completed research, the Court will not revisit motions after its research has been completed where a litigant has inexcusably filed an extremely untimely response.  The Court notes that it will often not even notice an untimely response, because it naturally ceases searching the docket for any response once it is overdue and the Court's research on the relevant motion is complete.  The local rule treating failures to timely respond as consent to grant a motion is even more important while this District is in a judicial emergency.  The Court appreciates Attorney Hyman's personal difficulties during the litigation of this case, but an attorney has an ethical duty of competence to his clients.  That duty is not limited to intellectual competence or good intentions.

1    The Court does not doubt that Attorney Hyman is intellectually capable and morally sound.  But
2    the duty of competence also requires the prudential administration of one's legal practice.  The
3    ethical decision an attorney must make when he is incapable of competently handling his
4    caseload is to withdraw from as many cases as necessary to bring his caseload in line with his
5    capabilities and return his clients' files so that they may seek competent representation
6    elsewhere.  An attorney may not transfer his excessive burdens onto the courts and his
7    adversaries by demanding the consideration of inexcusably late pleadings.

8           As for Motion No. 889, the Title Company Defendants argue that they are not alleged to
9    have had any part in the wrongdoing but only to have managed the escrow.  They argue that they
10   complied with escrow instructions and never made any representations that Plaintiffs' titles
11   would include interests in the 9.44 acres of common area at the development.  If Plaintiffs are
12   aggrieved that they did not obtain an interest in the 9.44 acres, Defendants argue, they are
13   aggrieved by their own or other Defendants' failures to ensure that the sales contracts and deeds
14   included such an interest.  Plaintiffs respond that because the deeds indicated that the purchased
15   units were "condominiums," Title Company Defendants were negligent in not ensuring that the
16   interests qualified as "condominiums" under Nevada statute and that they have breached the title
17   insurance agreements by failing to ensure against loss.  The Court finds Plaintiffs' arguments
18   more persuasive.  Plaintiffs note that the title insurance policies in this case explicitly insured the
19   common elements identified in the CC&R, which were excluded from Plaintiffs' titles.  It was
20   the Title Company Defendants' duty as the professional expert hired for the purpose to ensure
21   that the deeds included title to the areas insured under the title insurance policies.  The Court
22   denies this motion for summary judgment.
23   ///
24   ///
25          **C.     Discovery Motions**

### 1. Motion to Compel and for Attorney's Fees (ECF Nos. 827, 828)

Defendants Suntrust Mortgage Co. ("Suntrust"), America's Servicing Co. ("ASC"), and Wells Fargo Bank, N.A. ("WF") (collectively, "Movants") ask the Court to compel Plaintiffs to respond to certain requests for production and for sanctions in the form of attorney's fees and costs related to the present motion. Plaintiffs responded four months late and a week before the hearing such that Defendants had insufficient time to reply. The Court denies the motion to compel as moot as to Suntrust (to whom the Court grants summary judgment), but grants the motions as to ASC and WF.

### 2. Motion to Compel (ECF No. 888)

Defendant Commonwealth Land Title Insurance Co. ("Commonwealth") has asked the Court to compel certain discovery responses. As with the motions for summary judgment, Plaintiffs requested until March 20, 2012 to respond. The Court granted that request, but Plaintiffs did not respond until March 22, 2012. The Court grants the motion.

### 3. Motion to Continue Discovery (ECF No. 893)

In Motion No. 893, Plaintiffs ask the Court to extend the discovery cutoff date to April 22, 2012 or May 22, 2012. The Court denies the motion.

### 4. Motions for Sanctions (ECF Nos. 899, 909)

In Motions Nos. 899 and 909, Stump Defendants request discovery sanctions. Plaintiffs responded almost three months late and too close to the hearing for Defendants to reply. Stump Defendants' request to compel responses and for dismissal or lesser equitable remedies as a sanction is denied as moot, as the Court grants Stump Defendants' summary judgment motion. The Court also denies fees and costs related to bringing the present motions.

///

///

## CONCLUSION

1         IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 798) is GRANTED in

2  part, and the Motions to Dismiss (ECF Nos. 852, 891) are GRANTED in full.  Plaintiffs Sergio

3  Cabanas, Stephanie Cabanas, Jamie L. Castagna, Charles Corsentino, Cindy K. Corsentino, Ryan

4  Daw, Chad Epeneter, Kevin D. Forbes, Stacey T. Forbes, Leo Gillespie, David Goettge, Lisa

5  Hatton, Alan Jackson, Patricia Jackson, Henry Jennings, Heather Jennings, Craig Korotko,

6  Christine Korotko, Thomas Marr, Gale Marr, Gaurana Nanavati, Daniel A. Nell, Kelly S. Nell,

7  Matthew Phillips, Mirjam Phillips, Dani M. Potter, Mark Richards, Gary Rickling, Elizabeth A.

8  Rickling, Drew Secaffico, and Sharon H. Stola are DISMISSED for failure to prosecute.

9         IT IS FURTHER ORDERED that the Motions for Summary Judgment (ECF Nos. 850,

10  851, 854, 855, 887, 895) are GRANTED.

11        IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 889) is

12  DENIED.

13        IT IS FURTHER ORDERED that the Motions to Compel and for Sanctions (ECF Nos.

14  827, 828) are DENIED as moot as to Suntrust, but GRANTED as to America's Servicing Co.

15  and Wells Fargo.

16        IT IS FURTHER ORDERED that the Motion to Compel (ECF No. 888) is GRANTED.

17        IT IS FURTHER ORDERED that the Motion to Continue Discovery (ECF No. 893) is

18  DENIED.

19        IT IS FURTHER ORDERED that the Motions for Sanctions (ECF Nos. 899, 909) are

20  DENIED as moot as to the request for dismissal or other lesser equitable remedies and DENIED

21  as to the request for fees and costs associated with the motions themselves.

22        IT IS SO ORDERED.

23  Dated this 10th day of July, 2012.

24                                                      _____
                                                        ROBERT C. JONES
                                                        United States District Judge
25