UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FRAN DONOVAN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | 2:08-cv-01675-RCJ-RJJ |
|     vs. | ) | |
| | ) | |
| FLAMINGO PALMS VILLAS, LLC et al., | ) | **ORDER** |
| | ) | |
|     Defendants. | ) | |
| | ) | |

This case arises out of an alleged conspiracy to defraud investors in a condominium development in Las Vegas. Ten motions are pending before the Court.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the "Development"). Originally, there were 139 Defendants, 121 of whom remained in the Second Amended Complaint ("SAC") (ECF No. 183). Defendants are individuals and entities who allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development. The Development consists of an approximately 12-acre plot of land on which sit sixteen three-story apartment buildings, containing a total of 360 rental units. The three apartment buildings occupy 2.64 acres. The remaining 9.44 acres consist of several hundred parking spaces, swimming pools, and other open land (the "Common Area").

1    Beginning in 2004, Defendants began promoting and selling the 360 units in the
2 Development to buyers.  Defendants promoted the Development as a "resort community" that
3 would be developed into a hotel.  Initially, and before assuming its current name, the
4 Development was called the Las Vegas Cay Club Resort & Marina.  Defendants allegedly
5 represented that the Development already boasted numerous valuable amenities, such as large
6 covered patios, weight rooms, and spas, and that Defendants planned to enhance the
7 Development with many other amenities, such as a game room, a water park, a restaurant, and
8 conference facilities.  By paying a non-refundable $5,000 payment, Plaintiffs were allowed to
9 enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit
10 reserved for purchase.  Plaintiffs were later provided with a price list for the units, ranging from
11 $199,000 to $499,900.  After Plaintiffs invested, Defendants circulated various brochures and
12 letters to Plaintiffs, informing Plaintiffs of the status of the Development.  These letters and
13 brochures described or displayed images of the various improvements that were being done to
14 the Development.  Defendants also circulated a map of the Development.

15    Plaintiffs allege that the deeds they received in the purchase of each unit represented that
16 Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which
17 included parking spaces, swimming pools, and many other valuable amenities that Defendants
18 promised to add to the Development.  After the deeds were signed, Plaintiffs allege that
19 Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the
20 Development did not in fact include the Common Area, but were limited to their individually
21 purchased rental units and the area common to their particular buildings.  As a result, Plaintiffs'
22 purchased units did not even include any of the Development's parking spaces.  Plaintiffs
23 contend that the representations made in the fifty-seven page declaration conflicted with the
24 advertising and other promotional representations made by Defendants, the deeds, and the
25 appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

1     Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1). The Court
2 has ruled on dozens of dispositive motions. The operative version of the Complaint is the Third
3 Amended Complaint ("TAC") (ECF No. 335). Plaintiffs have categorized Defendants therein
4 into several groups: (1) the Fraudulent Enterprise Defendants ("FEPD"); (2) the
5 Promoter/Broker Defendants; (3) the Appraiser Defendants; (4) the Financial Institution
6 Defendants; and (5) the Title Company Defendants. The Court has adjudicated over one-
7 hundred (100) substantive motions in this case. Ten motions are pending before the Court.

## II.     DISCUSSION

### A.     Motion to Dismiss (ECF No. 1019)

Plaintiffs Daniel and Kelly Nell ask the Court to dismiss their claims with prejudice. Plaintiffs aver that in February 2009 they contacted Attorney Hyman to assist them with a foreclosure against their property at the Cay Club in Las Vegas, that despite repeated attempts between February 2009 and April 2009, Attorney Hyman never responded to their requests for information, that Attorney Hyman's secretary, Christine, informed them in April 2009 that neither she nor Attorney Hyman would respond to their telephone calls anymore but would only accept email communications, that they engaged the law firm of Rosenfeld and Rinato in April 2010 (presumably to assist with the foreclosure), and that they did not become aware until April 2012 that Attorney Hyman had listed them as Plaintiffs in the present case. The Court will grant the motion.

### B.     Motion to Vacate Trial and Shorten Time (ECF Nos. 1078, 1079)

Defendants Countrywide and Bank of America ask the Court to vacate the August 7, 2012 trial date and reset the trial for a date. Movants note that the scheduling order does not even make the joint pretrial order due until thirty days after the Court ruled on the last summary judgment motions, i.e., August 9, 2012. Movants base the motion on the fact that the Court had yet to decide some summary judgment motions when they filed the present motion. The Court

has now decided those motions, and Movants have been dismissed as Defendants.  The Court will deny the present motions.  Bank of America and Countrywide only remain in the case formally as Cross-plaintiffs for indemnity and contribution, and these crossclaims are now moot. The Court rescheduled the trial at oral argument for other reasons, in any case.

### C.     Motions in Limine

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill.

1   1993). This is because although rulings on motions in limine may save "time, costs, effort and
2   preparation, a court is almost always better situated during the actual trial to assess the value and
3   utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

4   In limine rulings are provisional. Such "rulings are not binding on the trial judge [who]
5   may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753,
6   758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to
7   change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in
8   limine does not necessarily mean that all evidence contemplated by the motion will be admitted
9   to trial. Denial merely means that without the context of trial, the court is unable to determine
10  whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

11  **1.    Motions Nos. 1084 and 1085**

12  These are motions by Stump and Callahan. Because the Court will amend the previous
13  Order (ECF No. 1082), *see infra*, to grant Movants' second motion for summary judgment,
14  which will result in that they are no longer parties to the case, the Court would normally deny the
15  present motions for lack of standing. However, Defendant Commonwealth Title Land Insurance
16  Co. ("Commonwealth") has joined the motions.

17  In Motion No. 1084, Commonwealth asks the Court to exclude certain evidence
18  concerning the value of the units. Movants note that Plaintiffs have failed to disclose any expert
19  testimony as to the values of the properties. The Court grants the motion in part. Plaintiffs may
20  argue causation and damages to the jury, but, as discussed at the hearing, they may not adduce
21  undisclosed experts, may not testify as to any figures not already disclosed during discovery, and
22  may not argue that attorney's fees are a measure of the damages for failure to defend (since
23  counsel noted at oral argument that the present case is on a contingency basis).

24  . In Motion No. 1085, Commonwealth asks the Court to exclude evidence of undisclosed
25  damages. Commonwealth has joined the present motion but has filed its own motion to the same

effect, *see infra*, Mot. No. 1088.  The Court will therefore deny the present motion.

### 2. Motion No. 1088

Commonwealth asks the Court to exclude evidence of damages not disclosed by Plaintiffs.  Commonwealth argues that Plaintiffs have failed to adduce any evidence indicating their damages.  The motion is in substance a motion under Rule 37 for discovery sanctions, not a common law motion in limine.  Commonwealth argues that Plaintiffs have failed to comply with Rule 26(a)(1)(A)(iii), which requires disclosure of a calculation of each category of damages.  "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).  There is only a reasonable argument as to the requirement to disclose individualized damages calculations, such that the failure to disclose a damage calculation is justified, in class actions. *See id.*  The present case includes dozens of Plaintiffs but is not a class action.  Next, if late disclosure would require a new briefing schedule and a reopening of discovery, as opposed to merely setting a new trial date, the failure is harmless. *See id.* at 1080.  Here, although the failure is not substantially justified, it is harmless.  Movants have been aware of the nature and approximate amount of damages since the inception of the case.  The Court need not reopen discovery or extend the briefing schedule.  The Court rules as it rules on Motion No. 1084.  Plaintiffs may introduce at trial no evidence of particular damage amounts not thus far disclosed, but they may argue that they have been damaged, and they may refer to any figures thus far disclosed.

### 3. Motion No. 1095

Commonwealth asks the Court to exclude evidence of certain communications between Commonwealth and Attorney Hyman.  Commonwealth claims that in response to allegations in the TAC that Commonwealth had failed to assist Plaintiffs in clearing title to their properties

1  when requested to do so by letter, it asked Attorney Hyman to provide it with evidence of any
2  such communication several times between July 2011 and February 7, 2012, because
3  Commonwealth could not find evidence of any such letter in its own files.  On March 1, 2012,
4  nine days after the close of discovery, Attorney Hyman finally adduced such a letter from
5  himself to Commonwealth, dated November 13, 2008, as an attachment to his affidavit in
6  support of Plaintiffs' response to Commonwealth's motion for summary judgment, as well as
7  FedEx shipping receipts relating to the letter, and a "November 20, 2012 [sic]" letter from
8  Commonwealth to Attorney Hyman.

9  Commonwealth argues that it has been unable to prepare its defense in the present case
10  because Hyman failed to adduce these pieces of evidence before the discovery cut-off.  The
11  Court will treat the motion as a motion for discovery sanctions under Rule 37 and grant it.
12  Evidence of the demand upon Commonwealth is excluded.

### D.   Motion to Remove Attorney (ECF No. 1091)

The Law Firm of Black & LoBello asks the Court to remove Attorneys Tisha Black-Chernine and Andras F. Babero from the electronic service list.  The Court grants the motion.

### E.   Motion to Clarify (ECF No. 1096)

Defendant Stump, Story, Callahan & Dietrich, P.A. ("Stump") and Scott Callahan ask the Court to clarify the effect of its two latest orders.  In one such order, the Court granted Movants' motion for summary judgment.  The Court therefore denied the other motion for summary judgment as moot, though Plaintiffs' had failed to timely respond or request any extension.  Movants note, however, that the first motion was directed against only forty-nine Plaintiffs, and that the denial of their second motion implies that they remain as Defendants as against the remaining Plaintiffs.  Movants are correct.  The Court treats the motion to clarify as a motion to amend judgment and grants it, amending the Order (ECF No. 1082) to read that the Motion for Summary Judgment (ECF No. 950) is not moot but is granted for failure to respond.

**F.  Motion to Reconsider (ECF No. 1098)**

Plaintiffs ask the Court to reconsider the grant of several motions for summary judgment based upon their failure to timely respond. Plaintiffs note the Court had in some such cases granted a motion to extend time, but Plaintiffs fail to note that they failed timely to lodge any proposed response within the additional time requested. The Court denies the motion.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 1019) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Vacate Trial and Shorten Time (ECF Nos. 1078, 1079) and the Motion to Reconsider (ECF No. 1098) are DENIED.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 1084) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 1085) is DENIED.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 1088) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 1095) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Remove Attorney (ECF No. 1091) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Clarify (ECF No. 1096) is GRANTED. Order No. 1082 is AMENDED to read that the Motion No. 950 is not moot but is granted for failure to respond.

IT IS SO ORDERED.

Dated this 30th day of July, 2012.

_____
ROBERT C. JONES
United States District Judge