1

2

3

4

5

6                      **UNITED STATES DISTRICT COURT**

7                            **DISTRICT OF NEVADA**

8

FRAN DONOVAN,                       )
9                                    )
                  Plaintiff,         )
10                                   )        2:08-cv-01675-RCJ-RJJ
       vs.                           )
11                                   )
FLAMINGO PALMS VILLAS, LLC et al.,   )            **ORDER**
12                                   )
                  Defendants.        )
13 _____  )

14        This case arises out of an alleged conspiracy to defraud investors in a condominium

15 development in Las Vegas.  Pending before the Court is a motion in limine and a motion for a

16 pretrial conference.  For the reasons given herein, the Court grants the motion in limine in part

17 and denies the motion for a pretrial conference.

18 **I.      FACTS AND PROCEDURAL HISTORY**

19        Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium

20 units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the

21 "Development").  Originally, there were 139 Defendants, 121 of whom remained in the Second

22 Amended Complaint ("SAC") (ECF No. 183).  Defendants are individuals and entities who

23 allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the

24 Development.  The Development consists of an approximately 12-acre plot of land on which sit

25 sixteen three-story apartment buildings, containing a total of 360 rental units.  The three

1   apartment buildings occupy 2.64 acres.  The remaining 9.44 acres consist of several hundred

2   parking spaces, swimming pools, and other open land (the "Common Area").

3       Beginning in 2004, Defendants began promoting and selling the 360 units in the

4   Development to buyers.  Defendants promoted the Development as a "resort community" that

5   would be developed into a hotel.  Initially, and before assuming its current name, the

6   Development was called the Las Vegas Cay Club Resort & Marina.  Defendants allegedly

7   represented that the Development already boasted numerous valuable amenities, such as large

8   covered patios, weight rooms, and spas, and that Defendants planned to enhance the

9   Development with many other amenities, such as a game room, a water park, a restaurant, and

10  conference facilities.  By paying a non-refundable $5,000 payment, Plaintiffs were allowed to

11  enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit

12  reserved for purchase.  Plaintiffs were later provided with a price list for the units, ranging from

13  $199,000 to $499,900.  After Plaintiffs invested, Defendants circulated various brochures and

14  letters to Plaintiffs, informing Plaintiffs of the status of the Development.  These letters and

15  brochures described or displayed images of the various improvements that were being done to the

16  Development.  Defendants also circulated a map of the Development.

17      Plaintiffs allege that the deeds they received in the purchase of each unit represented that

18  Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which

19  included parking spaces, swimming pools, and many other valuable amenities that Defendants

20  promised to add to the Development.  After the deeds were signed, Plaintiffs allege that

21  Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the

22  Development did not in fact include the Common Area, but were limited to their individually

23  purchased rental units and the area common to their particular buildings.  As a result, Plaintiffs'

24  purchased units did not even include any of the Development's parking spaces.  Plaintiffs

25  contend that the representations made in the fifty-seven page declaration conflicted with the

1    advertising and other promotional representations made by Defendants, the deeds, and the

2    appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

3         Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1).  The

4    operative version of the Complaint is the Third Amended Complaint ("TAC") (ECF No. 335).

5    The Court has adjudicated over one-hundred (100) substantive motions in this case.

6    **II.   LEGAL STANDARDS**

7         A motion in limine is a procedural device to obtain an early and preliminary ruling on the

8    admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain

9    inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion

10   when it believes that mere mention of the evidence during trial would be highly prejudicial and

11   could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed.

12   2009).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine,

13   the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant

14   to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing

15   Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible

16   evidence from being suggested to the jury by any means")).

17        A motion in limine is a request for the court's guidance concerning an evidentiary

18   question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  Judges have broad

19   discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d

20   663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual

21   disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323

22   (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible

23   on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D.

24   Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred

25   until trial so that questions of foundation, relevancy and potential prejudice may be resolved in

1   proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill.

2   1993).  This is because although rulings on motions in limine may save "time, costs, effort and

3   preparation, a court is almost always better situated during the actual trial to assess the value and

4   utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

5        In limine rulings are provisional.  Such "rulings are not binding on the trial judge [who]

6   may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753,

7   758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to

8   change, especially if the evidence unfolds in an unanticipated manner).  "Denial of a motion in

9   limine does not necessarily mean that all evidence contemplated by the motion will be admitted

10  to trial.  Denial merely means that without the context of trial, the court is unable to determine

11  whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

12  **III.    ANALYSIS**

13       Defendant Commonwealth Land Title Insurance Co. ("Commonwealth") asks the Court

14  to exclude any testimony by Plaintiffs' attorney Alan Hymen, whom Plaintiffs have identified as

15  a potential witness.  Commonwealth argues that the only possible testimony Hymen may have to

16  offer concerns the tender of a claim from him to Commonwealth on behalf of Plaintiffs, but that

17  the Court has excluded that evidence as a discovery sanction.  Commonwealth is correct, and any

18  such evidence is excluded.  The Court will not at this time, however, declare that Mr. Hyman

19  may not testify as to other matters about which he may have admissible, direct knowledge.  The

20  Court will entertain objections to any such proffered testimony at trial.  The Court denies

21  Commonwealth's motion for a pretrial conference.

22  ///

23  ///

24  ///

25  ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Pretrial Conference (ECF No. 1199) is DENIED.

IT IS FURTHER ORDERED that Defendant Commonwealth Land Title Insurance Company's Objection to Plaintiffs' Proposed Witness Alan Hyman Motion in Limine (ECF No. 1198) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this 10th day of October, 2012.

ROBERT C. JONES
United States District Judge