UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FRAN DONOVAN, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | 2:08-cv-01675-RCJ-RJJ | |
| vs. ) | | |
| ) | | |
| FLAMINGO PALMS VILLAS, LLC et al., ) | **ORDER** | |
| ) | | |
| Defendants. ) | | |

This case arises out of an alleged conspiracy to defraud investors in a condominium development in Las Vegas. Pending before the Court is a motion in limine and a motion for a pretrial conference. For the reasons given herein, the Court grants the motion in limine in part and denies the motion for a pretrial conference.

I.     **FACTS AND PROCEDURAL HISTORY**

Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the "Development"). Originally, there were 139 Defendants, 121 of whom remained in the Second Amended Complaint ("SAC") (ECF No. 183). Defendants are individuals and entities who allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development. The Development consists of an approximately 12-acre plot of land on which sit sixteen three-story apartment buildings, containing a total of 360 rental units. The three

1  apartment buildings occupy 2.64 acres.  The remaining 9.44 acres consist of several hundred
2  parking spaces, swimming pools, and other open land (the "Common Area").
3         Beginning in 2004, Defendants began promoting and selling the 360 units in the
4  Development to buyers.  Defendants promoted the Development as a "resort community" that
5  would be developed into a hotel.  Initially, and before assuming its current name, the
6  Development was called the Las Vegas Cay Club Resort & Marina.  Defendants allegedly
7  represented that the Development already boasted numerous valuable amenities, such as large
8  covered patios, weight rooms, and spas, and that Defendants planned to enhance the
9  Development with many other amenities, such as a game room, a water park, a restaurant, and
10 conference facilities.  By paying a non-refundable $5,000 payment, Plaintiffs were allowed to
11 enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit
12 reserved for purchase.  Plaintiffs were later provided with a price list for the units, ranging from
13 $199,000 to $499,900.  After Plaintiffs invested, Defendants circulated various brochures and
14 letters to Plaintiffs, informing Plaintiffs of the status of the Development.  These letters and
15 brochures described or displayed images of the various improvements that were being done to the
16 Development.  Defendants also circulated a map of the Development.
17        Plaintiffs allege that the deeds they received in the purchase of each unit represented that
18 Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which
19 included parking spaces, swimming pools, and many other valuable amenities that Defendants
20 promised to add to the Development.  After the deeds were signed, Plaintiffs allege that
21 Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the
22 Development did not in fact include the Common Area, but were limited to their individually
23 purchased rental units and the area common to their particular buildings.  As a result, Plaintiffs'
24 purchased units did not even include any of the Development's parking spaces.  Plaintiffs
25 contend that the representations made in the fifty-seven page declaration conflicted with the

1  advertising and other promotional representations made by Defendants, the deeds, and the

2  appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

3        Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1).  The

4  operative version of the Complaint is the Third Amended Complaint ("TAC") (ECF No. 335).

5  The Court has adjudicated over one-hundred (100) substantive motions in this case.

6  **II.    LEGAL STANDARDS**

7        A motion in limine is a procedural device to obtain an early and preliminary ruling on the

8  admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain

9  inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion

10  when it believes that mere mention of the evidence during trial would be highly prejudicial and

11  could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed.

12  2009).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine,

13  the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant

14  to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing

15  Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible

16  evidence from being suggested to the jury by any means")).

17        A motion in limine is a request for the court's guidance concerning an evidentiary

18  question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  Judges have broad

19  discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d

20  663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual

21  disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323

22  (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible

23  on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D.

24  Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred

25  until trial so that questions of foundation, relevancy and potential prejudice may be resolved in

proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

### III. ANALYSIS

Defendant Commonwealth Land Title Insurance Co. ("Commonwealth") asks the Court to exclude any testimony by Plaintiffs' attorney Alan Hymen, whom Plaintiffs have identified as a potential witness. Commonwealth argues that the only possible testimony Hymen may have to offer concerns the tender of a claim from him to Commonwealth on behalf of Plaintiffs, but that the Court has excluded that evidence as a discovery sanction. Commonwealth is correct, and any such evidence is excluded. The Court will not at this time, however, declare that Mr. Hyman may not testify as to other matters about which he may have admissible, direct knowledge. The Court will entertain objections to any such proffered testimony at trial. The Court denies Commonwealth's motion for a pretrial conference.

///

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Pretrial Conference (ECF No. 1199) is DENIED.

IT IS FURTHER ORDERED that Defendant Commonwealth Land Title Insurance Company's Objection to Plaintiffs' Proposed Witness Alan Hyman Motion in Limine (ECF No. 1198) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this 10th day of October, 2012.

_____
ROBERT C. JONES
United States District Judge