UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FRAN DONOVAN, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:08-cv-01675-RCJ-RJJ |
| FLAMINGO PALMS VILLAS, LLC et al., | ) ) | **ORDER** |
| Defendants. | ) ) | |

This case arises out of an alleged conspiracy to defraud investors in a condominium development in Las Vegas. Six motions in limine are pending before the Court.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs are eighty-seven individuals who, from 2005 to 2007, purchased condominium units in a development called the Palm Villas, Las Vegas Cay Club Condominiums (the "Development"). Originally, there were 139 Defendants, 121 of whom remained in the Second Amended Complaint ("SAC") (ECF No. 183). Defendants are individuals and entities who allegedly defrauded Plaintiffs, or assisted in defrauding Plaintiffs, into purchasing units in the Development. The Development consists of an approximately 12-acre plot of land on which sit sixteen three-story apartment buildings, containing a total of 360 rental units. The three apartment buildings occupy 2.64 acres. The remaining 9.44 acres consist of several hundred parking spaces, swimming pools, and other open land (the "Common Area").

Beginning in 2004, Defendants began promoting and selling the 360 units in the Development to buyers. Defendants promoted the Development as a "resort community" that would be developed into a hotel. Initially, and before assuming its current name, the Development was called the Las Vegas Cay Club Resort & Marina. Defendants allegedly represented that the Development already boasted numerous valuable amenities, such as large covered patios, weight rooms, and spas, and that Defendants planned to enhance the Development with many other amenities, such as a game room, a water park, a restaurant, and conference facilities. By paying a non-refundable $5,000 payment, Plaintiffs were allowed to enter into a Reservation Agreement, which required a $10,000 non-refundable payment per unit reserved for purchase. Plaintiffs were later provided with a price list for the units, ranging from $199,000 to $499,900. After Plaintiffs invested, Defendants circulated various brochures and letters to Plaintiffs, informing Plaintiffs of the status of the Development. These letters and brochures described or displayed images of the various improvements that were being done to the Development. Defendants also circulated a map of the Development.

Plaintiffs allege that the deeds they received in the purchase of each unit represented that Plaintiffs had an interest not only in their purchased units, but also in the Common Area, which included parking spaces, swimming pools, and many other valuable amenities that Defendants promised to add to the Development. After the deeds were signed, Plaintiffs allege that Defendants circulated a fifty-seven page declaration stating that Plaintiffs' interests in the Development did not in fact include the Common Area, but were limited to their individually purchased rental units and the area common to their particular buildings. As a result, Plaintiffs' purchased units did not even include any of the Development's parking spaces. Plaintiffs contend that the representations made in the fifty-seven page declaration conflicted with the advertising and other promotional representations made by Defendants, the deeds, and the appraisals on the units upon which Plaintiffs relied in deciding to invest in the Development.

1  Plaintiffs filed the Complaint on November 26, 2008. (Compl., ECF No. 1).  The
2 operative version of the Complaint is the Third Amended Complaint ("TAC") (ECF No. 335).
3 The Court has adjudicated over one-hundred (100) substantive motions in this case.  Six motions
4 in limine are pending before the Court.

5 **II.    LEGAL STANDARDS**

6  A motion in limine is a procedural device to obtain an early and preliminary ruling on the
7 admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain
8 inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion
9 when it believes that mere mention of the evidence during trial would be highly prejudicial and
10 could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed.
11 2009).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine,
12 the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant
13 to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing
14 Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible
15 evidence from being suggested to the jury by any means")).

16  A motion in limine is a request for the court's guidance concerning an evidentiary
17 question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  Judges have broad
18 discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d
19 663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual
20 disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323
21 (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible
22 on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co*., 326 F. Supp. 2d 844, 846 (N.D.
23 Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred
24 until trial so that questions of foundation, relevancy and potential prejudice may be resolved in
25 proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill.

1  1993). This is because although rulings on motions in limine may save "time, costs, effort and
2  preparation, a court is almost always better situated during the actual trial to assess the value and
3  utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

4       In limine rulings are provisional. Such "rulings are not binding on the trial judge [who]
5  may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753,
6  758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to
7  change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in
8  limine does not necessarily mean that all evidence contemplated by the motion will be admitted
9  to trial. Denial merely means that without the context of trial, the court is unable to determine
10 whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

11 **III.   ANALYSIS**

12      First, Defendant Commonwealth Land Title insurance Co. ("Commonwelath") asks the
13 Court to preclude any argument by Plaintiffs that they did not receive condominiums when they
14 purchased their units, because the Court recently (after four years of litigation, ruled that the
15 deeds, CC&R, and any other documents to the contrary were void under Nevada law, i.e., that
16 Plaintiffs did receive condominiums. Commonwealth notes that the Court has preliminarily
17 excluded evidence of certain communications to Commonwealth by Plaintiffs' counsel and any
18 reference to particular damage calculations, because this discoverable evidence was untimely
19 disclosed. Commonwealth therefore asks the Court to exclude any evidence relating to its
20 alleged breach of its duty to defend. The Court denies the motion. Plaintiffs may have other
21 evidence not excluded that could prove their claims.

22      Second, Commonwealth asks the Court to exclude evidence concerning its alleged duties
23 as a title carrier, i.e., that it had a duty to identify and bring to Plaintiffs' attention any defects in
24 their titles. Commonwealth argues that only an abstract of title, and not a title policy, requires
25 the disclosure of any and all potential encumbrances upon a title. The Court will not exclude all

such evidence at this time.  It will not be clear until trial whether certain such evidence is relevant.

Third, Commonwealth asks the Court to exclude any testimony that Plaintiffs owned and/or lost their interest in the 9.44 acres.  Commonwealth argues the weight of the evidence, not admissibility.  The Court denies the motion.

Fourth, Commonwealth asks the Court to exclude evidence or testimony concerning damages, specifically, that they have been damages in the amount of their entire purchase.  Commonwealth also argues offset and other issues more appropriately addressed to the jury, or to the Court in crafting jury instructions.  The Court denies the motion.

Fifth, Commonwealth again asks the Court to exclude any evidence relating to its alleged breach of its duty to defend.  The motion appears virtually identical to the first motion in limine.

Sixth, Commonwealth again asks the Court to exclude any evidence relating to its alleged duties relating to escrow instructions and processes.  Commonwealth again argues that Plaintiffs cannot prove damages.  Commonwealth also asks the Court to exclude certain arguments that it speculates Plaintiffs will make.  The Court denies the motion.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions in Limine (ECF No. 1157, 1159, 1161, 1163, 1164, 1165) are DENIED.

IT IS SO ORDERED.

Dated this 2nd day of January, 2013.

_____
ROBERT C. JONES
United States District Judge